No. 3262
Second Circuit

SHREVEPORT LONG LEAF LUMBER CO., INC., v. SPURLOCK

(November 8, 1928. Opinion and Decree.)

Cook & Cook, of Shreveport, attorneys for Shreveport Long Leaf Lumber Company, Inc., plaintiff, appellant.

Galloway and Johnston, of Shreveport, attorneys for Elliot Bros. Electric Co. intervenor, appellee.

B. H. Lichtenstein, of Shreveport, attorney for F. L. Rosenblath, intervenor, appellee.

Crain, Jackson and Johnston, of Shreveport, attorneys for Simmons Building Material Co., intervenor, appellee.

REYNOLDS, J.   This is a contest between Shreveport Long Leaf Lumber Company, Inc., as mortgagee, and Elliott Bros. Electric Co., F. L. Rosenblath, and Simmons Building Material Co., as lienors, for priority in the distribution of the proceeds of sale of certain immovable property belonging to their common debtor, Frank Spurlock, and subject to their mortgages and. privileges.

Frank Spurlock owned a piece of ground situated in the city of Shreveport, Louisiana, and, on October 4, 1926, he placed thereon a mortgage to secure the payment of the sum of $3,400.00 with interest thereon at the rate of 8% per annum and attorney's fees of 10%.

About December 1, 1926, he began the erection of a residence on the lot.

On December 11, 1926, he placed a second mortgage on the property to secure the payment of the sum of $600.00 with interest thereon at the rate of 8% per annum and 10% attorney's fees.

And on March 14, 1927, he placed a third mortgage on the property to secure the payment of the sum of $1778.14 with 8% per annum interest thereon and 10% attorney's fees.

Among others who furnished material or performed labor, or both, in the construction of the improvements, were F. L. Rosenblath, doing business under the name of Rosenblath Plumbing Company, W. R. Simmons, doing business under the name of Simmons Building Material Company, and Percy R. Elliott, doing business under the name of Elliott Brothers Electric Company.

On October 7, 1927, the Shreveport Long Leaf Lumber Company, Inc., sued out executory process on its first or $3,400.00 mortgage and the mortgaged property was seized and sold by the sheriff, that company becoming the adjudicatee at the price of $5,900.00.

After the seizure and before the sale Rosenblath filed an intervention in the suit setting up that on December 1, 1926, he had contracted with Spurlock to perform the labor and furnish the material necessary to install the plumbing and gas fitting in the residence and that he had complied with his contract and that the sum of $477.00 was owing to him by Spurlock therefor and that he had duly filed written evidence thereof in the office of the recorder of mortgages and had a privilege on the property to secure the payment thereof; and he prayed that the Louisiana Long Leaf Lumber Company and Spurlock be cited and served and that he have judgment against Spurlock for his debt and that he be decreed to have a privilege on the property to secure its payment, that the sheriff be ordered to retain in his hands until the further orders of the court the proceeds of the sale of the property in excess of the debt, interest and costs due under the Louisiana Long Leaf Lumber Company's first mortgage, and that his privilege be decreed superior to that company's second and third mortgages and satisfied out of the proceeds of the sale remaining in the sheriff's hands in preference to these mortgages.

The court signed an order directing the sheriff to retain in his hands the surplus of the proceeds of the sale of the property after satisfying the writ under which it was seized and sold.

Answering the intervention the Louisiana Long Leaf Lumber Company denied that intervenor had any privilege on the property, and set up the existence of its second and third mortgages, alleged that they primed in rank the alleged lien of intervenor and asked that the debts secured thereby be paid out of the money in the sheriff's hands in preference to intervenor's claim.

And thereafter Simmons filed an intervention in the suit setting up that between November 4, 1926, and April 8, 1927, both inclusive, he had sold and delivered building material to Spurlock for use in and that was used in the construction of the improvements on the property and that the sum of $417.88 was owing to him by Spurlock therefor, and that he had duly filed written evidence thereof in the office of the recorder of mortgages and had a privilege on the property to secure the payment thereof; and he prayed for judgment against Spurlock for the amount of his debt and that he be decreed to have a privilege on the property to secure its payment, and that his claim be paid out of the money in the hands of the sheriff in preference to all other creditors of Spurlock.

And thereafter Elliott filed an intervention in the suit, setting up that under contract with Spurlock he had performed labor and furnished material in installing the wiring and fixtures for electric light in the construction of the improvements for the price of $175.00, that he had duly filed written evidence of his claim in the office of the recorder of mortgages and had a privilege on the property to secure the payment thereof, and he prayed that his privilege be recognized and that his claim be paid out of the money in the sheriff's hand in preference to all other creditors of Spurlock.

On these issues the case was tried and there was judgment in favor of plaintiff, Shreveport Long Leaf Lumber Company,

Inc., and intervenors, Rosenblath Plumbing Company, Simmons Building Material Company, and Elliott Brothers Electric Company, and against defendant, Frank Spurlock, recognizing the mortgages of the Shreveport Long Leaf Lumber Company and the privileges of the Rosenblath Plumbing Company, Simmons Building Material Company, and Elliott Brothers Electric Company, on the property, for the amounts and ranking them and directing the proceeds of the sale to be distributed as follows, to-wit:

First: In payment of all costs of the suit.

Second: The mortgage debt of the Shreveport Long Leaf Lumber Company for the sum of $3400.00 with 8% per annum interest thereon from October 1, 1926, until paid, and 10% additional on the amount of principal and interest as attorney's fees.

Third: The privilege debts of the intervenors named, to be paid pari passu, to-wit:

Rosenblath Plumbing Company, for $477.00 with 5% per annum interest thereon from April 6, 1927, until paid.

Simmons Building Material Company, for $417.88 with 5% per annum interest thereon from March 7, 1927.

Elliott Brothers Electric Company, for $175.00 with 8% per annum interest thereon from May 28, 1927, until paid.

Fourth: The mortgage debt of the Shreveport Long Leaf Lumber Company for the sum of $600.00, with 8% per annum interest thereon from December 11, 1926, until paid, and 10% additional on the amount of principal and interest as attorney's fees.

Fifth: The mortgage debt of the Shreveport Long Leaf Lumber Company for the sum of $1778.14, with 8% per annum interest thereon from March 14, 1927, and 10% additional on the amount of principal and interest as attorney's fees.

The Shreveport Long Leaf Lumber Company appealed.

OPINION

Section 12 of Act No. 298 of 1926 reads, in part, as follows:

"When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the said owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required by this act, then any person furnishing service or material or performing any labor on said building or other work may record in the office of the Clerk of Court or Recorder of Mortgages in the parish in which said work is being done a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recordation, if done within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same, by said furnisher of material of said laborer, shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work of improvement * * *

"Said lien and privilege shall be superior to all other claims against the said land and improvements, except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor's privilege, whether arising from a sale and resale to and from a regularly organized homestead or building and loan association, if said vendor's privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished * * *."

The claim of privilege of Rosenblath Plumbing Company was filed in the office of the Clerk of Court on April 6, 1927.

As to the date when the work was done and material furnished for which the privilege is claimed, F. L. Rosenblath testified:

"Q. When did you do this work?
"A. Along about December 7th, of last year.
"Q. 1926?
"A. Yes, sir.
"Q. Has that work ever been completed?
"A. No, sir.
"Q. What is necessary in order to complete it?
"A. Have to get the plumbing inspected by the plumbing inspector.
"Q. Has the work ever been inspected?
"A. No, sir.
"Q. Is there some additional work in order to get a complete inspection, in order for the city inspector to make his inspection of it?
"A. Yes, sir.
"Q. When was the last time you did any work on the property?
"A. That was done some time in February, 1927."

The claim of privilege of Simmons Building Material Company was filed in the office of the Clerk of Court on May 7, 1927.

As to the date when the material was delivered for which the privilege is claimed, W. R. Simmons testified:

"Q. When did you begin to make the delivery of the material that was used in the construction of those improvements?
"A. In November, 1926.
*  *  *
"Q. With the exception of one yard of gravel, you completed your delivery of the job on January 7, 1926?
"A. No; 1927.
"Q. 1927?
"A. Yes, sir.
"Q. Then the only material that was delivered to the job (after that) was one yard of gravel, which was delivered after that, on April 8th; is that correct?
"A. Yes, sir; and it is customary to do that, and it was the last material used.
"Q. I am asking you what the facts were, and not what the custom was; you filed your lien, then, on May the 7th, 1927?

"A. Yes, sir.
*  *  *
"Q. In other words, from January the 7th 1927, until April the 8th, 1927, there has elapsed a period of approximately ninety days; is that correct?
"A. Yes, sir.
"Q. And the only material that you delivered (within that ninety days) is one yard of gravel?
"A. Yes, sir.
*  *  *
"Q. What was this material (for) that was delivered on April the 8th?
"A. It was for the extension of the driveway.
*  *  *
"Q. On January the 7th, 1927, when you made the last delivery prior to the delivery of April the 8th, did you know that there was still a delivery of gravel to be made to that job?
"A. Yes, sir.
"Q. Under your agreement with Mr. Spurlock was it your duty to deliver that gravel?
"A. Yes, sir."

The claim of privilege of Elliott Brothers Electric Company was filed in the office of the Clerk of Court on May 28, 1927.

As to the date when the work was done and material furnished for which the privilege is claimed, Percy R. Elliott testified:

"Q. When did you first have an agreement with him (Spurlock) to furnish and install the electrical fixtures on this job?
"A. We were notified to start on the job * * * on or about the 1st of December; the first work was done on December the 8th.
"Q. What year?
"A. 1927.
"Q. You mean 1926?
"A. Yes, sir; it ran into 1927; the job was not finished until 1927.
*  *  *
"Q. When was the work done under your agreement?
"A. The job progressed through January the 21st was the last time that any labor was performed on the job.
"Q. You performed the last labor on the job on January the 21st?

"A. Yes, sir.

"Q. What was that?

"A. I presume that the work would be that of putting in the switch-plates, hanging light fixtures, as that is usually the last thing that is done on a job.

\* \* \*

"Q. Has that contract been completed with him (Spurlock)?

"A. It has not been completed yet.

"Q. What is there lacking to be done yet? Except to put in the lamps?

"A. It is necessary to put in the lights, together with the fuses, and have a final inspection.

"Q. Why did you not do that on January the 21st when you did your last installing there?

"A. The lamps and fuses are items that are easily removed, and are always stolen on a new job, and they are never furnished until the house is occupied, and they are placed in then; and the final inspection, that is never made until the house is to be occupied.

"Q. Have you been ready at all times to do that?

"A. Yes, sir; when they notified me that the house was to be occupied.

"Q. By whom were you to be notified?

"A. Mr. Spurlock."

As to the claim of privilege of the Rosenblath Plumbing Company, the Shreveport Long Leaf Lumber Company, Inc., contends that when the job was ready for inspection by the city "some time in February, 1927," the "last delivery of all material" and the "last performance of all services or labor" on the job were done, and that the delay for filing the claim of privilege then began to run, that it was not filed within sixty days thereafter, and that therefore the Rosenblath Plumbing Company had no privilege.

The claim of privilege was filed on April 6, 1927, and conceding that this was not within sixty days after the job was ready for inspection, we do not think the delay for filing it had yet run.

Ordinances of the city of Shreveport require jobs of this kind to meet certain standards they prescribe and forbid the use of such installations until they have been inspected and approved. If, on inspection, the work done or material furnished fails to obtain such approval the contractor must do such other work or furnish such other material as may be necessary to obtain it; and until then it cannot reasonably be said that there has been a "last delivery of all material" or "last performance of all services or labor" on the job.

At the time of the trial, January 4, 1928, the inspection had not yet been made, and we are of opinion that the sixty-day delay had not yet expired and that the claim of privilege was timely filed.

As to the claim of privilege of the Simmons Building Material Company, the Shreveport Long Leaf Lumber Company, Inc., contends that the "last delivery of all material" was on January 7, 1927, and as the claim of privilege was not filed until May 7, 1927, the filing was too late to create a privilege.

We do not think so. On January 7, 1927, the driveway of the residence was not completed, and on April 8, 1927, a yard of gravel was delivered for the completion of this work. W. R. Simmons testified that this yard of gravel was delivered pursuant to the agreement with the owner of the property, Mr. Spurlock, under which the rest of the material sold by him was delivered, and that when he made the last delivery of material prior to this one on January 7, 1927, he knew that there was further material for the job to be delivered.

We are of opinion that the "last delivery of all material" was this yard of gravel on April 8, 1927, and as the claim of privilege was filed within sixty days thereafter we hold that it also was timely filed.

As to the claim of privilege of the Elliott Brothers Electric Company, the Shreveport Long Leaf Lumber Company, Inc., contends that the "last delivery of all material" and the "last performance of all services or labor" on the job was on January 21, 1927, and that the filing of the claim of privilege on May 28, 1928, gave it no privilege.

The contract under which the work was done required the Elliott Brothers Electric Company to furnish lamps and fuses, and until these are furnished and installed we do not think the "last delivery of all material" will have been made or the "last performance of all services or labor" will have taken place, and the lamps and fuses had not been furnished up to the time the trial took place, January 4, 1928.

Installations for electric lighting must conform to certain standards prescribed by ordinance of the city of Shreveport and must receive the approval of the city before they can be used for that purpose. Mr. Percy R. Elliott testified that this inspection has not yet been made. It may be that the installations may not meet with the approval of the authorities and in that event other material may have to be delivered and other services or labor performed as a prerequisite to such approval, and for this additional reason it cannot reasonably be said that on January 21, 1927, there had been a "last delivery of all material" or "last performance of all services or labor" on the job or that there will have been before the furnishing of the lamps and fuses and the approval of the work by the city.

We hold that the claim of privilege of Elliott Brothers Electric Company also was timely filed.

The Shreveport Long Leaf Lumber Company, Inc., cites the case of Gleissner vs. Hughes, 153 La. 133, as sustaining its contention that the sixty-day delay for filing the claims of privilege began to run as it claims and not as contended for by the intervenors. But that case has no application to this one for the reason that the statute there under consideration was different from the one applicable here. And we are also referred to other cases and have examined them and do not find them controlling here.

We find no error in the judgment appealed from and accordingly it is affirmed.