No. 4112

Second Circuit

(Second Division)

———

REX ELECTRIC CO., INC., v. GLORIOSO

———

(March 16, 1932. Opinion and Decree.)
(May 4, 1932. Rehearing Refused.)

———

Wilson & Abramson, of Shreveport, attorneys for plaintiff, appellee.

John B. Hussey, Jr., of Shreveport, attorney for defendant, appellant.

DREW, J. Plaintiff alleged that defendant was indebted unto it in the sum of $145, together with 5 per cent per annum interest from June 18, 1930, until paid, for this, to-wit:

That in April, 1930, the defendant contracted with L. L. Davidson to make. certain repairs, and improvements on property owned by defendant in Bossier parish, La.; that L. L. Davidson subcontracted the electrical work to petitioner, in connection with which petitioner furnished materials and performed work between the dates of April 17 and June 18, 1930, and that the contract price for said work was $145.

It further alleged that it had recorded in the mortgage records of Bossier parish, on July 24, 1930, an affidavit of its claim, and sent a copy of same to defendant by registered mail, and by virtue of its said act it claims a lien and privilege on the property of defendant, in addition to a personal judgment. It attached to the petition a certified copy of deed to defendant of the property on which the repairs and improvements were made, together with a statement of the claim alleged to be due.

Defendant filed an exception of lis pendens, alleging that a suit against L. L. Davidson for the identical bill sued on herein was pending in the courts of Caddo parish. This exception was overruled, and is not now urged in this court.

Defendant answered, admitting that he entered into a contract with L. L. Davidson to make certain improvements on his property in Bossier parish, and that Davidson subcontracted the electrical work to plaintiff. He denies that plaintiff performed any work or furnished any material under said subcontract after May 3, 1930. He admits the filing of an affidavit of its claim by plaintiff in the mortgage records of Bossier parish, La.

In reconvention, he alleged that plaintiff did not serve upon defendant, by registered mail or personal service, a sworn detailed itemized statement of his claim, that the affidavit filed in the mortgage records of Bossier parish was not filed within the delay provided by law and is therefore null and void, in so far as affecting a lien and privilege on defendant's property, and should be canceled. He prays for $50 attorney's fees for having said lien canceled.

On these issues the case was tried below resulting in judgment for plaintiff against defendant for $145, with interest as prayed for, and rejecting the demands of plaintiff for recognition of a lien and privilege on the property, and ordering the inscription of the account and affidavit erased from the mortgage records of Bossier parish. From this judgment, plaintiff prosecutes this appeal, praying that the judgment be amended by recognizing its lien and privilege.

In this court the defendant has filed an exception of no cause of action, based on the ground that plaintiff has neither alleged nor proved that the amount sued for

was the reasonable value of the labor and materials alleged to have been done and furnished. Plaintiff recorded in the mortgage records of Bossier parish a sworn itemized statement of materials furnished and labor performed on a combination store and dwelling house of defendant, on July 24, 1930, and sent by registered mail to defendant a sworn itemized statement as recorded, and defendant received same.

There is no dispute over the amount of the contract price between L. L. Davidson and plaintiff, and it is admitted that plaintiff furnished the necessary materials and performed the work as claimed. There was no written contract between defendant and Davidson and no contract was recorded.

The record discloses that on and prior to May 3, 1930, plaintiff wired the building and did nothing else until June 17th and 18th, on which days it tested the job and found the wiring defective. One of its employees worked there on June 17th and another on June 18th, at which time all errors and mistakes were straightened out. It was impossible to test the work at a sooner date, due to the fact that the electric company did not connect up with the house and place a meter therein until the 16th or 17th of June, 1930. The testimony shows that the job was not complete until the test was made and that no job of this kind is complete until a test is made and the lights burn. The reason for that is amply shown by the facts in this case.

When the electric current was connected and the test made, it was found that some of the lights would burn and others would not, and plaintiff was required to tear out part of its work and replace it. This inspection or test made on June 17th and 18th was pursuant to the original plans and agreement, and there was no last performance of all service or labor on the job, as respecting time, for recording a sworn itemized statement, under Act No. 298 of 1926, sec. 12, until after the test was made and the lights made to burn. The contract plaintiff made with Davidson was not completely fulfilled until such time, and a suit by plaintiff on said contract before the test was made could have been successfully defended on that ground. Shreveport Long Leaf Lbr. Co., Inc., v. Spurlock, 9 La. App. 224, 120 So. 126; Cox et al. v. Rockhold (Gable, Intervener), 14 La. App. 170, 128 So. 702.

The sworn itemized statement recorded on July 24, 1930, in the mortgage records of Bossier parish, was within the time provided by law, and plaintiff is entitled to recognition of its lien and privilege on the property of defendant, as prayed for.

Defendant relies on the cases of Hortman-Salmen Co., Inc., v. White, 168 La. 1067, 123 So. 715, and Northrop v. Guy, 172 La. 543, 134 So. 738, to sustain his defense. However, we do not think the cases applicable to the facts in this case. Defendant further questioned the constitutionality of Act 298 of 1926. His attack, however, is leveled at the finding of the district court that plaintiff did not have a lien and privilege, and then rendering a personal judgment against defendant. Under our holding that the sworn itemized statement was recorded within sixty days from the time of the last performance of labor or service, it becomes unnecessary to discuss the question of unconstitutionality raised. Likewise it is unnecessary to discuss the exception of no cause of action filed in this court, which is overruled.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court, in so far as it refused to recognize

the lien and privilege of plaintiff against the property of defendant, is reversed; and the judgment of the lower court is now recast to read as follows:

It is ordered, adjudged, and decreed that plaintiff have and recover judgment against the defendant, Joe Glorioso, in the full sum of $145, with legal interest thereon from June 18, 1930, until paid, recognizing plaintiff's lien and privilege on the following described property of defendant, situated in Bossier parish, La., to-wit:

"A certain one-acre tract of land, in Sections 22 and 27, Township 18 N., Range 13 West, Bossier Parish, Louisiana, more particularly described as follows:

"Beginning 496.76 feet west and 40 feet south of the common corner of Sections 22, 23, 26 and 27, Township 18 N., Range 13 West; run thence north 17 degrees 30 minutes, west 208.71 feet, north 72 degrees 30 minutes, east 208.71 feet; south 17 degrees 30 minutes, east 208.71 feet; south 72 degrees 30 minutes west, 208.71 feet to place of beginning and being part of Sections 22 and 27, Township 18 N., Range 13 West, Bossier Parish, La.

"Also one acre of land, more particularly described as:

"Beginning 822.8 feet west and 419.95 feet south of Common corner to Sections 22, 23, 26 and 27, Township 18 N., Range 13 west, Bossier Parish, La., run thence North 67 degrees 42 minutes, west 83.16 feet; thence North 12 degrees 21 minutes, east 264.00 feet; thence South 83 degrees 39 minutes east, 260.04 feet; thence South 52 degrees 29 minutes west, 92.40 feet; thence South 44 degrees 23 minutes west, 132.00 feet; thence South 33 degrees 32 minutes West, 132.00 feet; to place of beginning and being part of Section 27, Township 18 N., Range 13 West, Bossier Parish, La., and lying and being situated in the forks of the Dixie Highway, and another road leading into said Dixie Highway, from the Benton Highway"—and for all costs.