## GENERAL LUMBER & SUPPLY CO. v. McLELLAN.

### No. 2224.

Court of Appeal of Louisiana. First Circuit.

March 4, 1941.

502

L. V. Cooley, Jr., of Slidell, for appellant.

Ellis, Ellis & Barranger, of Covington, and John Perez, of New Orleans, for appellee.

LEBLANC, Judge.

This is a suit for an alleged balance of $506.03 claimed to be due by plaintiff for building material and supplies furnished to John Comerma who is alleged to have been the duly authorized agent of the defendant herein, duly empowered to act for him in obtaining and purchasing the same.

It is alleged that all of the said material and supplies were used in building and erecting a swimming pool and an addition to a home, and in the repairing and remodeling of certain other buildings, all located upon certain real estate situated in the Parish of St. Tammany, and belonging to the defendant.

Plaintiff alleges that the supplies and material were furnished between the dates of July 11, 1938, and December 2, 1938, and on January 13, 1939, through one of its officers, it appeared before L. V. Cooley, Jr., notary public, and subscribed to an affidavit setting forth the indebtedness of the defendant, and had the same recorded in the mortgage records of the Parish of St. Tammany on January 16, 1939.

Plaintiff claims that under the laws of this State, and especially under Act No. 298 of 1926 and its amendments, it has a lien and privilege upon the defendant's property which is fully described in the petition, having preserved the same by timely recordation of the affidavit for which it paid the recording fee of $1.

The prayer is the usual one for judgment in the amount of the balance claimed, plus the sum of $1, as recording fee, and with recognition of the lien and privilege which is claimed. An itemized statement of the account and a copy of the recorded affidavit are annexed to the petition.

The defendant first filed an exception to the jurisdiction of the Court rationae personae based on plaintiff's allegation in the petition that he is a resident of the City of New Orleans. The district court sustained the exception as to the demand being prosecuted in personam and reserved plaintiff's right to continue its suit in rem.

Under reservation of the exception the defendant filed his answer in which he admitted that plaintiff delivered material and supplies to John Comerma, who was an independent contractor. He denies further that Comerma was his agent and empowered to act for him in buying and obtaining the said material and supplies. He further denies that there is a balance due on the said account as alleged and calls for strict proof thereof.

Further answering the defendant admits that the supplies furnished by the plaintiff were used on his property but that they were so used in two separate and distinct contracts which he sets out as follows: The first, entered into during the month of July, 1938, for the construction of a swimming pool, shower and dressing rooms, and for building brick steps in front of his residence, under the terms of which Comerma

was to furnish the material and do the work for the price and sum of $3,827. This contract, it is averred, was completed on or before October 4, 1938, and Comerma was paid by him in full and the contract terminated. The other was a contract entered into on or about November 4, 1938, for building an extension on his home, putting a strip in the kitchen sink, fixing the toilet in the keeper's house, repairing galvanized gutters and building dish shelves and trelleses, all for the sum of $395.14. Defendant alleges, on information and belief, that the material covering the second contract was furnished by plaintiff to Comerma between November 3, 1938, and December 2, 1938, the same amounting to the sum of $166.47 and that he paid Comerma the total amount due under this second contract save and except the sum of $107.14. He further avers that the lien which the plaintiff sues on is invalid, null and void and of no effect except as to that material which was furnished by plaintiff from November 3, 1938, up to and including December 2, 1938, amounting to the sum of $166.47 which latter amount he has tendered the plaintiff but tender was waived.

On the issues as thus presented to it, the district court rendered judgment in favor of the plaintiff and against the defendant, limiting plaintiff's lien however, to the sum of $167.47. It rejected the remainder of plaintiff's demand and decreed all costs to be paid by it. Plaintiff thereupon took this appeal.

■ The contention of the plaintiff in this suit is that there was but one undertaking by this defendant and that related to the improvement of his property as a whole and covered the entire period during which it furnished materials and supplies to his contractor. The defendant on the other hand maintains that there were two separate and distinct contracts, the first of which, as alleged in his answer, had been completed and was terminated in full by payment to and acceptance of such payment by the contractor on October 6, 1938, and the second which arose some two or three weeks afterwards, early in the month of November, and was completed on December 2, 1938. It is contended further that the lien now claimed by the plaintiff having been filed and recorded more than sixty days after the termination of the first contract, cannot avail the plaintiff of any of the rights accorded to the furnisher of material and supplies, as to that contract. It

is necessary then in order to properly decide the question at issue, which of these contentions is supported by the testimony in the case.

We find but little difficulty in agreeing with the trial judge that the defendant has clearly sustained his defense of two separate agreements and contracts involving purchases of materials for each, at the time construction was going on under each, and that any lien which might operate against the property must be limited to the supplies and materials furnished on the second contract, as the affidavit filed and recorded to preserve the same, was placed of record beyond the sixty days after the termination of the first contract. It does not seem to be disputed that that is the time limit fixed in the Statute itself.

Plaintiff endeavored to prove its case through the testimony of Comerma, but as it turned out, his testimony tended largely to support the defense which was presented to its claim for a lien. He says that he solicited the work from the defendant, and that he did is clearly shown by his letter of July 16, 1938, addressed to the defendant in New Orleans in which he proposed to furnish material and labor to build the swimming pool according to plans submitted, for the sum of $3,300. He later identifies a statement in the form of a bill covering the contract price as stipulated in the letter and some additional work running the total amount to $3,827. This statement is dated October 6, 1938, and it is conceded, as thereon appears, that on that date, he was paid by defendant, the sum of $3,902, or an amount $75. in excess of the total amount due under the statement. He says himself that the swimming pool had been finished before the house extension job began and that the only work he did on the pool afterwards was to repair the drain pipe, a matter to which we will refer hereafter. He then itemizes another document dated December 2, 1938, which is indicated by its own terms as the contract for building an extension in the defendant's home and says that that was an entirely different contract from the other. He testifies further that all of the material delivered after November 3, 1938, was used on the second contract.

From Comerma's own testimony it appears then that there was an intervening period of from two to three weeks between the completion of the work on the first contract and the beginning of work under the

second. Plaintiff would have it appear that there was a lapse in the ordering and delivering of materials during that period because Comerma had become financially embarrassed and it refused to make any further deliveries on his own orders. It is urged by them that when this happened, the defendant's wife who was anxious to have the work completed interceded and it was on her representations that deliveries were resumed. These facts are presented as forming the basis of a plea of estoppel against the defendant but apart from the doubt which we entertain regarding exactly what happened, we do not think that there is any doubt, from the testimony of Comerma and the documentary evidence, including the statements of account presented by plaintiff itself, that the exact situation regarding the two separate and distinct contracts, and the separate furnishing of the materials and supplies on each, respectively, has been shown and that the first of these two contracts had been entirely completed and discharged in full by the defendant on October 6, 1938, more than sixty days prior to the time plaintiff filed this affidavit in order to preserve the lien which it now claims.

In a further effort to uphold its contention that there was but one general undertaking tending to the improvement of defendant's property as a whole, plaintiff stresses the fact that there was a bag and a half of cement used out of one of the very last deliveries made, for work on the drain pipe in the swimming pool. The evidence shows however that this was strictly some repair work that was done after Comerma had discovered that there was a leak in the drain pipe. As a matter of fact this was the second time he had repaired it and on both occasions he did it without the knowledge of the defendant. Whatever work done on the drain pipe, having been shown to be merely repair work, it could not under the jurisprudence of this State have had the effect of extending the time of the completion of the first contract. In the case of Hortman-Salmen Co., Inc., v. White, 168 La. 1067, 123 So. 715, 716, the Court stated: "Of necessity, some time must be fixed for the recordation of building liens to make them fully effective. Cf. Capital Building & Loan Association v. Carter, 164 La. 388, 393, 113 So. 886, and Gleissner v. Hughes, 153 La. 133, 138, 95 So. 529. The statute fixes the time, where no contract was entered into or recorded, at within sixty days

from the last labor done on the building or the last service or material furnished. Within the contemplation of the statute, the last labor is done and the last service or material is furnished prior to the time the building is considered or treated as completed. *The correcting of defects, which may appear from time to time in the work, after the building is considered and treated as completed, [is] not to be counted or deemed as part of the labor contemplated by the statute, in fixing the time, nor should material or services furnished for that purpose be so regarded."* (Italics ours.) To the same effect see H. R. Hayes Lumber Co. v. H. M. Jones Drilling Co., 177 La. 626, 148 So. 899.

The drain pipe which was placed in the swimming pool at first was a terra cotta pipe. After the pool had been completed the defendant had Comerma to terrace around it and after the terracing had been done Comerma noticed that the weight was too great for the pipe and it evidently cracked and began to leak. He repaired it but the repair work did not hold up, so, on his own initiative, he changed the pipe from a terra cotta to an iron one which he embedded in concrete. It was in doing this last work that he used the cement out of the last delivery made by the plaintiff. Counsel for plaintiff, arguing that the work done on the pipe was not in the nature of repair work, but was in fact replacement, refers us to two cases which he contends are authorities to the effect that the prescriptive period for the recording of plaintiff's lien did not begin to run until after Comerma had replaced the drain pipe. These two cases are Shreveport Long Leaf Lumber Co., Inc., v. Spurlock, 9 La.App. 224, 120 So. 126, and Rex Electric Co., Inc., v. Glorioso, 19 La.App. 712, 140 So. 236, but on reading both of these decisions it becomes apparent that the work done under the contracts in each case was not completed in the sense that the first contract in the present case had been, prior to the expiration of the time limit for recording the affidavit in order to preserve the lien. In the first of these two cases, it appears that the contract involved some electric work which, under a City Ordinance required inspection and approval, which inspection had not yet been made and until it had been, and the work approved, the Court held that it could not reasonably be said to have been completed for, in the event it would not be approved, some additional work might have to be done and ad-

ditional supplies and materials furnished. In the second case the same reasoning was followed where again it appeared that a test or inspection had to be made and thereafter it became necessary that some of the work be torn out and replaced. As already indicated, in the present case there was no inspection or test required to be made of the drain pipe in the swimming pool and the repair was made without the knowledge of the owner, by the contractor himself who most probably did so because he was prompted by a worthy motive or desire to see that his work would hold up and turn out to be satisfactory.

As a last contention, counsel for plaintiff urges that the defendant can be sued in the Parish of St. Tammany because Act No. 16 of 1886 gives plaintiff that right. The act in question provides: "That parties holding claims against any citizen of this State for labor performed or for supplies or materials furnished, or for improvements made upon any farm or plantation, or real estate, are hereby authorized to institute suit for the recovery of such claims before any competent court having territorial jurisdiction of the property, whether the owner be domiciled or not in the parish where the property is situated." Apart from the doubt which exists whether the provisions of this act have been superceded or repealed by subsequent acts, it is our opinion that this Statute was enacted in order to give a laborer or the furnisher of materials and supplies a right to sue the owner of the property for the improvement of which the work was done or supplies furnished, when the owner himself, or through a duly authorized agent, has contracted with the laborer or the furnisher for the work to be done, and not when he has had the work done through a contractor as in the present case. Had plaintiff succeeded in supporting its allegation that Comerma was the duly authorized agent of the defendant, then the provisions of the Act might have applied, but he clearly did not and the only way in which jurisdiction of the Court of St. Tammany Parish could attach as against the defendant would be by virtue of the lien the plaintiff may have against the defendant's property. To the extent of the value of the materials and supplies furnished on the last contract, the lower court correctly held that the lien did apply and the judgment is executory against the property for the improvement and benefit of which those materials and supplies were furnished.

We have concluded that the case was properly decided in the Court below on every issue that was presented to it and the judgment is for that reason now affirmed at the costs of the plaintiff-appellant herein.