66 So.2d 424 (1953)
W. M. BAILEY & SONS
v.
WESTERN GEOPHYSICAL CO., Inc., et al.
No. 7960.
Court of Appeal of Louisiana, Second Circuit.
June 30, 1953.
*425 Ferris & Achee, Shreveport, for appellants.
Hargrove, Guyton, Van Hook & Hargrove, Shreveport, for appellees.
McINNIS, Judge.
This is a demand by a subcontractor against a principal contractor and the owner of the building for personal judgment for $536, and for recognition of a lien and privilege on the building and the lot on which it is located.
It is alleged that at the request of the principal contractor plaintiff furnished and installed two Model SLA 10/0 × 12/0 × 1¾ Crawford Marvel-Lift doors in the building for an agreed price of $536, including labor to install the doors. It is further alleged that within 60 days of the last delivery of all materials or the last performance of all services or labor upon the property, plaintiff filed with the Clerk of Court an estimate or affidavit of claim according to law, and a certified copy of the lien is annexed to the petition.
Upon information and belief it is alleged that the owner failed to secure from the City of Shreveport a certificate of occupancy as provided by Ordinance No. 80 of 1948, and therefore the lien was timely filed.
The prayer of the petition is first for personal judgment in solido against the owner and the principal contractor, and second, for judgment against the defendants, recognizing a vendor's lien on the doors to the extent of $536, and ordering them detached and sold to pay the amount of its claim, and third for judgment against, the owner, recognizing the lien and privilege for $536, and ordering the property sold to pay the debt.
In a supplemental petition plaintiff alleges in the alternative, and only in the event the court should hold that plaintiff is not entitled to any of the three remedies set forth in the original petition, that it is entitled to judgment dissolving the sale of the doors for non-payment of the purchase price, and ordering the defendants to deliver the doors to plaintiff.
The defendant owner answered the original and supplemental petitions, admitting *426 that someone installed the doors as alleged, but denying any contractual relation with plaintiff, and denying the other substantial allegations of the petitions, and further answering alleges that the building was completed and accepted prior to January 2, 1951, and that it paid the principal contractor in full all sums due, including the price of the doors.
While the suit was pending Harry A. Genteman, the principal contractor, died, and Mrs. Artie Genteman Woodman was appointed administratrix of his succession and was made a party to the suit. No answer was filed by Genteman or the administratrix, and default was entered and proved up as to the administratrix.
After trial on the merits, there was judgment in favor of plaintiff and against the administratrix of Genteman's estate for the amount sued for, and judgment in favor of Western Geophysical Company, Incorporated, and against plaintiff, rejecting its demand against the last named defendant.
From that part of the judgment unfavorable to it, plaintiff prosecutes a suspensive and devolutive appeal.
The pertinent facts of this case are not in dispute, but the application of the law to the facts is seriously contested. In his written opinion the district judge has correctly stated the relevant and important dates in the case as follows:
"(1) September 22, 1950: Genteman orders the doors from plaintiff;
"(2) October 30 and 31, 1950: Doors delivered to the Company's premises;
"(3) November 15, 1950: Doors `physically installed' in the buiding;
"(4) Last week of December, 1950: The Company moves into and occupies the building;
"(5) January 6, 1951: W. M. Bailey, Jr., one of the partners, inspects and adjusts the doors;
"(6) January 18, 1951: Last date other sub-contractors or general contractor performed work on the building;
"(7) February 27, 1951: David Blackburn, job supervisor for plaintiff, spends the better part of an hour adjusting the doors;
"(8) April 27, 1951: Plaintiff files a lien against the company and Genteman in connection with the sale and installation of the doors;
"(9) August 22, 1951: The Company procures a formal certificate of occupancy from the City of Shreveport as required by ordinance."
The first question to be determined is whether or not plaintiff timely filed the lien. It is conceded by plaintiff that, although it is entitled to a personal judgment against Genteman for the price of the doors, it is not entitled to personal judgment against the other defendant, unless its lien was timely filed. Plaintiff contends that since the ordinance of the City of Shreveport requires a certificate of occupancy for a new building, the delay for filing its lien did not begin to run until the formal certificate of occupancy was obtained. Defendant admits the existence of the municipal ordinance and that its terms are correctly set forth in Paragraph 11 of plaintiff's petition, as follows:
"Certificate of occupancy for a new building or the alteration of an existing building shall be applied for coincident with the application for a building permit and said certificate shall be issued within three days after the request for same shall have been made in writing to the Building Inspector after erecting or alteration of such building or part thereof shall have been completed in conformity with the provisions of these regulations. Pending the issuance of a regular certificate a temporary certificate of occupancy may be issued by the Building Inspector for a period not exceeding six months, during the completion of alterations or during the partial occupancy of the building pending its completion. Such temporary certificate shall not be construed as in any way altering the rights, duties, or obligations of the owners or of the City relating to the use or occupancy of the premises or any other matter covered by this ordinance, and such temporary certificate shall not be issued except under such restrictions and provisions as will adequately insure the safety of the occupants."
*427 Mr. Charles Leslie, Building Inspector for the City of Shreveport, testified that he made a final inspection of this building and approved the same during the latter part of December, 1950 and that, in the case of a new building, such as this, the gas is not turned on until an approval following inspection by the plumbing inspector, and the electricity is not turned on until approval by the electrical inspector, and that where there has been approval of all of these, the issuance of a certificate of occupancy follows as a matter of course upon application made therefor. The electricity and gas had been connected prior to January 2, 1951. This testimony shows that although a certificate of occupancy had not actually been issued, even at the time this suit was filed, it would have been issued as a matter of course, early in January, 1951, if an application had been made. The company had actually occupied the building the last week of December, 1950 and apparently its failure to obtain the certificate of occupancy was a mere oversight. In our opinion, the statutory lien period is not suspended under such circumstances by mere failure to secure the issuance of a formal certificate as directed to be done by the ordinance. We have been furnished no authority that justifies plaintiff's contention in this connection. The lien statute, LSA-R.S. 9:4812, provides that liens must be filed within 60 days from the last delivery of all material upon the property or the last performance of all services or labor thereon. The case of Shreveport Long Leaf Lumber Company, Inc., v. Spurlock, 9 La.App. 224, 120 So. 126, in our opinion, is not applicable to the facts in this case.
The last date on which subcontractors performed work on this building was January 18, 1951 and plaintiff's lien was not filed until April 27, 1951, based on a sale of doors made by plaintiff in September, 1950 and actually installed in the building on November 15, 1950. The 60 days' delay provided by the statute had expired unless it be found that what David Blackburn, job supervisor for plaintiff, did on February 27, 1951 was the performance of work or the delivery of materials in connection with the sale and installation of these doors, and we do not believe that it was. The correction of defects, making minor adjustments, etc. and furnishing of material or services for such purpose are not a part of the labor, material or services within the meaning of the statute in fixing the time for the filing of the lien. Hortman-Salmen Company v. White, 168 La. 1067, 123 So. 715; Electric Contracting Company v. Brown, La.App., 39 So.2d 100; Hicks v. Tate, La.App., 7 So.2d 737; General Lumber & Supply Co., v. McLellan, La. App., 200 So. 501.
The record in this case clearly discloses that plaintiff completed delivery and installation, save making minor adjustments that might be necessary by reason of the doors taking on added weight as the result of painting or absorbing moisture from the elements. It does not follow that the installation is incomplete until these adjustments are made. They are minor and required maybe oiling movable parts and tightening the coil spring for raising and lowering the doors and, in both cases January 6, 1951 and February 27, 1951, that was all that was required to be done.
The factual situation in Rex Electric Company, Inc., v. Glorioso, 19 La.App. 712, 140 So. 236 is not the same as in the case under consideration. In the cited case the work was not complete until the work was tested, and it could not be tested until the electric energy was connected, and when this was done, the lights would not come on, and some two days work had to be done, finishing up the work.
It follows that the plaintiff's lien was not timely filed within the meaning of the statute and that the judgment rejecting plaintiff's demand against the company should be affirmed.
The next contention of plaintiff is that if it is not entitled to a personal judgment, it is entitled, under Article 3227 of the LSA-Civil Code, to recognition and enforcing a vendor's privilege on the doors. The claim is resisted on the ground the doors were sold to Genteman and had not been in his possession for some months prior to plaintiff's effort to assert a vendor's privilege, the building of which the doors were *428 a part having been delivered to Western Geophysical Company, Inc., owner.
We are of the opinion that the demand to assert a vendor's lien on the doors cannot be maintained. The doors were movables and did not become immovable by destination, but immovable by nature, and for the protection of persons who furnish material or labor on a building, the lien statute protects them provided they timely file their lien and have it recorded as required by law. Plaintiff's contention is not supported by one of the cases cited on this point, Receivership of Augusta Sugar Co., 134 La. 971, 64 So. 870, 872, where the court held:
"Where the things sold are mere materials for the construction or repair of a building, or of machinery, these materials when put into the building constructed or repaired or into the repaired machinery lose their identity and become merely a part of the building or repaired machinery. In such case the vendor's privilege is lost; but out of its ashes springs another privilege, that of the furnisher of materials, which rests upon the structure as a whole, and upon one acre of the ground upon which the structure stands."
In our opinion the alternative demand for a dissolution of the sale for the non-payment of the price based on Article 2561, LSA-C.C. is as untenable as the demand to enforce a vendor's lien. The Supreme Court held in Lalance Grosjean Manufacturing Company v. George G. Wolff & Levi, 28 La.Ann. 942, that the right of resolution for non-payment of the purchase price of a movable may be exercised only so long as the movable remains in the possession of the original vendee.
We have heretofore held that when the doors sold by plaintiff were installed, as a part of the building, they became incorporated in the building and lost their identity as movables and in that process plaintiff lost its vendor's privilege, and the same applies with equal force to the demand to dissolve the sale.
For the above reasons, the judgment appealed from is affirmed at the cost of plaintiff.