OVEBTON, Justice.
 

 This appeal presents two distinct proceedings, growing out of the execution of a judgment, rendered in the cause, constituting the title of this ease. One of these is a third opposition, filed by the Louisiana Oil Befining Corporation, asserting a mortgage against a mineral lease and its equipment, granted by the Bateman Oil Corporation, a former owner of the lease and its equipment, recorded in the mortgage records on April 15, 1930. Thereafter the lease and its equipment were sold to the 'Jones Drilling Company, Inc., and the Lyons Gas Company, Inc., defendants in the ease, who expressly assumed payment of the foregoing mortgage debt and the payment of an account due by the Bateman Oil Corporation to the Hayes Lumber Company.
 

 In executing the judgment obtained against the defendants in the case, the lease and its equipment were sold at sheriff’s sale on March 7, 1931. The amount, brought by the property, was insufficient to satisfy the claims of both plaintiff and the Louisiana Oil Corporation, and, since these companies entertained different views as to which was entitled to preference, the Louisiana Oil Corporation filed the third opposition referred to, claiming the right to prior payment over plaintiff. This proceeding, involved in the appeal, we shall dispose of first.
 

 The other proceeding involved in the appeal is a proceeding by rule, filed by the sheriff against the Louisiana Oil Befining Corporation to compel that corporation to show cause why it should not pay to the sheriff the proceeds of certain oil shipped to it from the wells on the lease, while, it is asserted, the oil was under seizure. This proceeding we shall dispose of last.
 

 The third opposition of the Louisiana Oil Befining Corporation involves the consideration of the judgment from which execution issued to determine whether that corporation’s claim or the claim of plaintiff is entitled to payment by preference. The judgment from which execution issued recognizes the lien and privilege, claimed by plaintiff, as -a furnisher of materials, and sustains a writ of provisional seizure that issued upon the ground of the existence of this privilege.
 

 The foregoing judgment is not binding on the Louisiana Oil Corporation, for that company, although served with notice of seizure, made under the writ of provisional seizure, was not a party to the suit.
 

 At the outset, it may be observed that Act No. 232 of 1916, relative to the drilling of wells for oil, gas, or water, and relating to the granting of privileges to the furnishers of material and others, has no bearing on this case, because the act relates solely to the furnishing of material where the
 
 *631
 
 drilling of wells is let by contract, and here the drilling of the wells was not so let, bnt the work was done by the owner of the lease. Likewise Act No. 171 of 1928 does not affect this case, for that act relates to privileges in favor of laborers only for services rendered in the operation of oil and gas wells, and not to privileges in favor of the furnishers of material. Act No. 172 of 1928 is likewise not pertinent here, for that act also relates to privileges in favor of laborers only, and does not include furnishers of material. The only act pertinent to the privilege, asserted by plaintiff, is Act No. 29S of 1926, pertaining to the construction, repair, and improvement of buildings and .works on immovable property. There are even items in plaintiff’s account to which the act of 1926 has no application, for the act relates only to constructions on top of the ground, whether upon land leased or not leased, and does not, therefore, relate to the drilling of oil and gas wells, which, by their nature, are constructions made underground. Calatex Oil & Gas Co. v. Smith, 175 La. 678, 144 So. 243.
 

 As to whether all of plaintiff’s claim is or is not secured by the privilege of the furnisher of material is not important under our view of the case. The mortgage of the Louisiana Oil Refining Corporation was recorded in the mortgage records, as stated, on April 15, 1930, and the lien, asserted by plaintiff, was registered on June 5, 1930. Although the mortgage was recorded prior to plaintiff’s lien, it does not follow that the mortgage primes the lien. The mortgage, when the lien of the furnisher of material is timely recorded, is primed by the lien, if the mortgage is not registered until after the construction or repairs has begun, although the mortgage be recorded prior to the lien. Section 12 of Act No. 298 of 1926; Hortman-Salmen Co. v. White, 168 La. 1049, 123 So. 709; Hortman-Salmen Co. v. White, 168 La. 1057, 123 So. 711. It is not questioned that the mortgage, in this instance, was not recorded until after the work and labor had begun — in fact, the record leaves no doubt that it was not. Therefore it is necessary to determine whether plaintiff’s asserted lien was timely recorded. If it were not, then the mortgage, which was the first recorded, primes the lien under the laws of registry.
 

 The mortgage, as we have said, was recorded on April 15, 1930, and the lien on June 5, 1930. The lien, to be timely recorded, must be registered within sixty days after the completion of the work or construction, or within that time after the work is treated as finished, where the construction of the improvement or the work of repair has not been let by contract, as is the case here, or the contract, if one has been executed, has not been recorded. Section 12 of Act No. 298 of 1926; Hortman-Salmen Co. v. White, 168 La. 1067, 123 So. 715; National Homestead Association v. Warren C. Graham, 176 La. 1062, 147 So. 348, handed down on Feb. 27, 1933.
 

 The work was completed, and the lease was in full operation as an oil producing field by March 23, 1930. This appears from the evidence of the witness Daugherty, who fixes the date by the date of his return to the field from a hospital after an accident had befallen him. He testifies, in part, as follows:
 
 *633
 
 “Q. The three wells upon that lease you state were fully completed? A. Yes, sir. Q. Prior to March 23, 1930? A. Yes, sir. Q. And all other constructions on the lease were completed at that time? A. Yes, sir. * * *” He says that there was some work done in May, 1930, consisting of the putting in of “targets” to treat the oil and pump it away, hut explains that the lessees treated and pumped oil before they put in the “targets,” using a drilling rig “pot,” that is, boiler, belonging to H. M. Jones, which they replaced with another. So far as appears, it may be observed, at this point, that this act, to the extent it may affect the issue, was merely the replacement of work which had been completed. Daugherty’s evidence, as to the completion of the work on or before March 23, 1930, is supported by the evidence of Elliot, an employee of the Louisiana Oil Refining Corporation. He says that the work was fully completed in March, 1930, that the loading rack was completed at that time, and that oil was then being shipped from the field.
 

 To overcome the effect of this evidence, plaintiff has endeavored to show that the work undertaken was not completed until May 24, 1930, by offering evidence of the purchase for the field, under date of May 3, 1930, of one piece of oak lumber and of one piece of screen wire' for $4.05, and, under date of May 14, 1930, of 155 sacks of cement for $139.05, and, under date of May 24, 1930, of 30 fire brick for $3. These articles were purchased some forty-three days after the preceding item on the account was purchased. With these exceptions, the items on the account follow each other in comparatively close succession.
 

 This intermission of forty-three days in the purchases -we view as a circumstance, tending to show that the items, specifically named and purchased last, were purchased for additions to the original project, or more likely for repair work. The wire screening was obviously not a part, whether by amendment or otherwise, of the original plan, for it was purchased to save Daugherty, due to his accident, the trouble of having to go down a ladder to clean off a suction pick-up pump, upon which the screening was placed. The fire brick were used inside the boiler that was replaced in May, and is in the nature of an addition to equipment, which itself was a mere replacement of another boiler. It does not appear for what purpose the cement, if purchased, was used, nor does it appear to what purpose the piece of oak lumber was devoted. The circumstances surrounding the entire development of the field lead us to the conclusion, however, that they were used for repair work or for additions to the improvements, after the completion of the original work.
 

 Our conclusion is that the furnishing of these articles, they being merely for repairs on, or for additions to, a completed work, do not affect the date we have found to be the date of the completion of the original work undertaken, namely, March 23, 1930, and since more than sixty days elapsed between that date and June 5, 1930, the date of the recordation of plaintiff’s lien, it follows that the mortgage of the Louisiana Oil Refining Corporation, under section 12 of Act No. 298 of 1926, primes the claim of plaintiff.
 

 It might be ruled otherwise as to the several items specifically named in this opinion,
 
 *635
 
 and purchased last, for as to them plaintiff’s claim might he said to have been recorded timely, but none of them appears to have been for a purpose coming within the scope of Act No. 298 of 1920, which is pertinent only to constructions made on the ground, as we have said, and not to works beneath it, such as wells.
 

 The disposition of the foregoing branch of this case brings to us for consideration the second branch of it, which is the rule by the sheriff against the Louisiana Oil Refining Corporation. This branch of the case involved originally an accounting for oil from two-leases, namely, the Womble lease, which was before us in the first branch of the case, and the Cook lease, which was also seized in that branch of the case,' but not sold. This branch of the case divides itself into two periods. One of these is from the date of the levy under the writ of provisional seizure which issued in the case, and which was executed on October 10,1930, to the date of the levy under the writ of fieri facias, which issued from the judgment rendered in the case, and which was on January 14, 1931, and the other from, that date to the date of the sale of the Womble lease, under the writ of fieri facias, which was on March 7,1931. The accounting for this latter period has passed, it may be said, out of the ease, for it is not pressed by either side, apparently for the reason that the cost of production, during that period, exceeded the value of the oil. On the Cook lease, the cost of production during the seizure under the writ of fieri facias was $433.30, while the value of the oil produced and delivered by the keeper, appointed by the sheriff, was $307.07, and on the Womble lease the cost of production was $1127.27, while the value of the oil produced and delivered by the keeper, appointed by the sheriff, was $570.24.
 

 During the first period, that is, the period between the levy under the writ of provisional seizure and the levy under the writ of fieri facias, the operations, which were under different plans, make a different showing. During that period no oil was run from the Cook lease because of the lack of facilities to deliver it, but oil was delivered to the Louisiana Oil Refining Corporation, amounting in value to $1,531, from the Womble lease.
 

 Prior to the levy under both* writs, the defendants in the suit, for the provisional seizure, that is, the Jones Drilling Company, Inc., and the Lyons Gas Company, Inc., were delivering oil from the Womble lease, under the ordinary division order into tank cars at a loading rack, about three-quarters of a mile distant from the field, through a pipe line, connecting the lease with the loading rack. This method of delivery was continued during the interval between the levy under the writ of provisional seizure and that under the writ of fieri facias.
 

 The value or price of the oil, received by the Louisiana Oil Refining Corporation during the period of provisional seizure, was applied by that corporation to the mortgage, granted on the Womble lease by the Bateman Oil Corporation, a former owner of that lease, in favor of the Louisiana .Oil Refining Corporation, and assumed by the defendants in this case, the Jones Drilling Company, Inc., and the Lyons Gas Company, Inc.
 

 When the writ of provisional seizure was executed, the plaintiff in the suit for provisional seizure and the defendants therein, the
 
 *637
 
 Jones Drilling Company, Inc., and the Lyons Gas Company, Inc., realized at once that it would not do to shut down the wells, due to the likelihood of their being damaged by the encroachment of salt water, and entered into an agreement, the sheriff being present, by which defendants were to continue to operate the wells.
 

 What transpired on the occasion of the agreement and the agreement itself is testified to by one of plaintiff’s counsel as follows, to wit:
 

 “In answer to the question, will say that after the property was seized, the evening that it was seized or the following morning, H. M. Jones, the defendant, came to my office and we had a conversation in regard to the seizure, and Jones and myself went to the office of Mr. Hough, the sheriff, and it was agreed between the plaintiff, through his attorney, and Mr. Jones and his attorney, that due to the fact that the nature of wells was such that if they were closed down, salt water would take them. It was mutually agreed that Jones would pay the operating expenses of the wells under seizure and that the oil would be run to the Louisiana Oil Refining Corporation, that the oil would remain under seizure. That the wells, the runs and equipment to be and remain under seizure, but to be operated under the arrangement, with the agreement that the oil was to be run to the Louisiana Oil Refining Corporation.”
 

 The Louisiana Oil Refining Corporation was not a party to the foregoing agreement, nor did any contractual relation exist between the sheriff, the plaintiff in rule, and that corporation. As to the Louisiana Oil Corporation, this amply appears, not only from the foregoing quotation, but from the entire record. ' As to the sheriff, this appears from the following extract, taken from his evidence, to wit:
 

 “Q. I do not understand you to say Mr. Hough that you had any agreement with the Louisiana Oil Refining Corporation prior to the issuance of the writ of fieri facias in this ease? A. To tell the truth I never had any agreement or understanding with the Louisiana Oil Refining Corporation. Q. In this whole case Mr. Sheriff did you know that the Louisiana Oil Refining Corporation was getting the oil? A. Well, I did not see them get it. Q. Tou do not know that they did, do you? A. Jones said that they were. Q. Tou heard that they were getting it from one of the parties to the suit? A. Well Jones was a party to the suit, I suppose. Q. He ran the oil to someone after that? Q. Tou were not attempting to exercise any control over that? A. No, sir, I was not. Q. Tou were not running the oil? Tou were not directing the method by which it was run? A. I was not running the oil. Q. Were you directing how the oil should be run? A. I had nothing to do with the running of the oil at all.”
 

 It appears to be clear from the foregoing that, if a valid seizure of the oil was made under the writ of provisional seizure, the plaintiff, who caused the writ to issue, and possessed the right to release the seizúre, agreed with the defendants that the wells should be operated and that the oil produced should be run to the Louisiana Oil Refining Corporation, which the defendants did do in the same manner as they had done prior to the seizure.
 

 
 *639
 
 The sheriff was not hound to either plaintiff in the provisional seizure suit or to the defendants therein for the oil, since it was shipped by defendants in accordance with the agreement between them and the plaintiff in the case, which certainly could not have the effect of rendering the sheriff accountable. If the sheriff is not accountable to any of the parties to the provisional seizure suit, he has no right to sue the Louisiana Oil Refining Corporation for an accounting, for he shows no interest to sue. The plaintiff and the defendants in the provisional seizure suit may have such right, but not the sheriff under the facts disclosed. The fact that notice of seizure was served on the Louisiana Oil Refining Corporation under the writ of provisional seizure, although that corporation was not a party to the suit in which the writ issued, does not alter the case. That act did not prevent the release of the seizure, and this was the effect of the agreement as to third parties, such as the Louisiana Oil Refining Corporation. The agreement that the seizure should remain intact was binding only upon the parties to it, and has no effect upon others.
 

 As observed by counsel for the Louisiana Oil Refining Corporation, the principle underlying the right of action in an officer to recover property, validly seized or placed in his possession, of which he has been dispossessed, is his accountability for the value of the property. Newman v. Wilson, 1, La. Ann. 48; Crawford v. Graves, 15 La. Ann. 243, 244. In this instance the sheriff is not accountable. Pepin v. Dunham, 20 La. Ann. 88. Hence the sheriff shows no interest to institute and sustain the proceeding by rule brought by him. The effect of the agreement between the parties to the suit gives him no such interest, for the duties and responsibilities of sheriffs are fixed by law, and cannot be enlarged by private agreements between litigants.
 

 The trial court rendered judgment in favor of the Louisiana Oil Refining Corporation, recognizing, in effect, its right to payment by priority over plaintiff, the H. R. Hayes Lumber Company, out of the proceeds of the sale of March 7, 1931, which are the proceeds of the sale of the Womble lease, and rendered judgment also on the rule, filed by the sheriff, rejecting, in effect, his demands.
 

 The judgments are affirmed.