## WEAKS SUPPLY CO., Limited, v. GULF REFINING CO.

### No. 5623.

Court of Appeal of Louisiana. Second Circuit.

March 8, 1938.

Rehearing Denied April 1, 1938.

James H. Trousdale, Jr., of Monroe, for appellant.

J. S. Atkinson, Frederick E. Greer, Alex F. Smith, and C. C. Richmond, all of Shreveport, for appellee.

DREW, Judge.

This is a suit by the Weaks Supply Company, Limited, to enforce a materialman's lien against property owned by the Gulf Refining Company, in Tallulah, La.

The Gulf Refining Company, as owner, contracted the erection of a filling station on its property in Tallulah with one W. H. Blane, principal contractor, of Monroe. The contract and bond were not filed of record. . The plumbing and piping were subcontracted to one L. A. Nettles, of Tallulah. Mr. Nettles purchased the necessary materials, amounting to the sum of $410.19, from plaintiff. The orders were made by mail and the materials shipped via rail. The last materials were shipped by plaintiff on December 17th, being 'consigned to Mr. Nettles at Tallulah.

Plaintiff, not having been paid for the materials furnished, filed its lien of record on March 4, 1937. A copy of the lien was mailed, in accordance with law, to defendant at Shreveport and was received. No action being taken by Mr. Nettles or defendant, suit was brought to enforce the lien on May 9, 1937. Defendant entered a general denial, specifically contending that the lien filed did not constitute a valid lien.

Trial was had on June 17th; the court went into vacation and, by mutual consent, judgment was rendered during vacation on July 31st. The judgment rejected plaintiff's demands and it has appealed to this court.

The lower court rendered a written opinion in the case, in which it found the facts to be as follows:

"On the trial of the case, plaintiff filed in evidence the original lien for materials, consisting of an affidavit and supporting invoices, as same was recorded in the records of Madison Parish. On cross-examination, the defendant proved by plaintiff's witnesses, that the amount stated in the affidavit did not agree with the amount shown by the invoices filed as a part of the lien. Thereupon, plaintiff corporation produced corrected invoices and by testimony of an official of plaintiff corporation, endeavored to show that the error was clerical, and that the amount so claimed and shown by affidavit, namely $410,19, was the true and correct amount. The court permitted the introduction of this testimony over the objection of counsel for defendant, who contended that the amount actually shown by the invoices filed as a part of the lien and so recorded could not be subsequently changed by corrected invoices or by testimony; but these invoices must stand or fall by the amount shown on said itemized statements.

"The lien in question was filed by Weaks Supply Company, Ltd., plaintiff herein, on March 4, 1937, and it was plaintiff's contention that the last work done and labor performed was on January 8, 1937; therefore, the filing of said lien was within the 60-day statutory period required under the law. Defendant corporation denied that the lien was timely filed and produced witnesses who were connected with the defendant corporation in various capacities, who set the date of the completion of said gasoline service station as the latter part of November, 1936, to November 29, 1936, and it was further testified that certain defects in construction were corrected not later than December 18, 1936.

"The principal question to be decided in this case is whether or not the affidavit with supporting witnesses was filed within the statutory period of time to constitute a valid lien under the terms and conditions of Act No. 298 of 1926, § 12. The answer to this question can only be determined by an examination of the testimony of the various witnesses who were heard on the trial of the case.

"The testimony of the witness, L. A. Nettles, indicates that the major portion of his work was completed some time during the latter part of November or the first part of December, 1936.

"The attorney for plaintiff propounded the following question to Nettles: 'When did you do that work and during what months and what year?' Answer: 'October, November, December 1936 and some up to the first of January, 1937.' Question: 'Mr. Nettles, when was the last day that you installed materials from the Weaks Supply Company in this particular job?' Answer: 'The best I can remember was on or about January 8th that the last piece was put on the job.' .

"The answer to a question, concerning certain materials was 'those materials were put there, the last materials, on January 8, 1937, the best I can remember.' Later, the question was asked: 'Is your memory vague as to the last day when you worked on that

building?' Answer: 'I couldn't give exact dates, but it was sometime—a couple of weeks more after I installed the tire rack before I finished the job.'

"It is apparent from the testimony of the witness, Nettles, that he had no idea as to the specific date that his contract was completed. His testimony is vague and indefinite. It was further shown that Nettles considered the contract completed not later than December, 1936. It was also shown that there was a controversy between Blane, the principal contractor, and Nettles, the sub-contractor, as to whose responsibility it was to construct the hose rack and to this difference of opinion can be attributed the delay in its completion.

"On the other hand, the testimony of the witness Blane disclosed that the contract was completed on November 29, 1936. The witness Vivien stated that the contract was completed November 28th or 29th, 1936, while the witness Miller testified that the work was completed on November 10, 1936, and that the final disbursement made by the Gulf Refining Company to the contractor, Blane, was made by Miller for said Gulf Refining Company about December 20, 1936.

"It therefore appears that due to a misunderstanding and a controversy between the principal contractor and the subcontractor, as to whose responsibility it was to construct a hose rack, that this particular work was not done, but at some later date the subcontractor did do some additional work to complete the rack in question.

"While section 12 of Act No. 298 of 1926 states that 'any person furnishing service or material or performing any labor * * * may record * * * a copy of his estimate or an affidavit * * * which recordation, if done within sixty days after the date of the last delivery of all material * * * or the last performance of all services or labor * * * shall create a lien and privilege upon the building,' etc., yet the language of the statute must be construed by the interpretation of said Act by the Supreme Court of Louisiana.

"'Under Act No. 298 of 1926, § 12, relating to recordation of mechanics' lien claims where no contract has been entered into or recorded, and requiring claim to be recorded within 60 days after time of last delivery of material or last service performed or labor done, curing of defects which may appear from time to time after building is considered and treated as completed is not deemed part of labor contemplated in fixing time, nor should material or services furnished for that purpose be so regarded.' Hortman-Salmen Company, Inc., v. White, 168 La. 1067, 123 So. 715.

"'To be "timely recorded," lien of furnisher of materials must be registered within 60 days after completion of work or construction, or within that time after work is treated as finished, where construction of improvement or work of repair has not been let by contract, or contract, if executed, has not been recorded.'

"'Furnishing of articles for repairs on or for additions to completed work held not to have affected date of completion of original work so as to extend time for filing of lien by furnisher of material. (Act No. 298 of 1926, § 12.)' H. R. Hayes Lumber Company v. Jones Drilling Company, 177 La. 626, 148 So. 899.

"These cases clearly state that there must be some definite time to consider work completed; otherwise, the period for the 'timely filing', might be continued indefinitely.

"The witnesses for the plaintiff and defendant were of the opinion that the work was completed not later than the month of December, 1936, although toward the end of the trial of the case, the witness Nettles after being recalled and closely examined, did positively state that the last work on the said filling station was done on January 8, 1937.

"There was also considerable testimony concerning the correction of defects of a tire rack, but it was finally determined that the rack was completed at a time that would be of no assistance to plaintiff in the filing of a lien within the statutory period.

"This court made a personal and careful examination of the hose rack at the Gulf Station in Tallulah, Louisiana, being the same rack that plaintiff relied upon to establish its lien. It appears to this court that the work done was corrective and could be considered as an addition to completed work. The air line was already functioning, but to facilitate the use of same, it was necessary to raise the line by the addition of pipe, with the necessary fittings. It was also testified that the work would take about seven hours to complete, but this court is of the opinion that not more than two and one-half hours of continued work would be required to make the correction or completion.

"It is, therefore, the opinion of this court that plaintiff corporation has failed to show

886

that the lien was timely filed, as required by Act No. 298 of 1926, § 12, for the reason that the date of the last work done or labor performed has not been shown with that reasonable degree of certainty necessary to definitely determine same. However, if plaintiff had proved that the last work had been done on January 8, 1937, as alleged, yet the personal examination of the 'air hose rack' in question has convinced this court that the construction of said rack was in the nature of an addition to completed work; and therefore would not come under the provisions of said Act, as interpreted by the decisions of the Supreme Court of the State of Louisiana.

"Under this holding by this court, it becomes unnecessary to discuss or decide upon the question of the correctness of the amounts in the affidavit and the invoices filed as part of the original lien.

"It is therefore ordered, adjudged and decreed that there be judgment in favor of defendant, the Gulf Refining Company, and against plaintiff, Weaks Supply Company, Limited; that the demands of plaintiff, insofar as they relate to the recognition and perfection of a mechanic's lien against the property of defendant, be dismissed and rejected; costs to be paid by Weaks Supply Company, Limited, plaintiff herein.

"Frank Voelker, Judge.
"Sixth Judicial District of Louisiana."

The plaintiff contends here that the lower court was in error in finding that the testimony did not substantiate the fact that the lien was filed within 60 days after the completion of the work. We have carefully studied the record and are unable to say that the lower court was in error in this respect.

Nettles, the subcontractor, testified at one time as follows: "Those materials were put in there, the last material on January 8, 1937, the best I can remember. I have no record of just what day, but I know that it was a couple of weeks later after we put in rack inside that we put the hose rack outside."

Later in his testimony he said: "I couldn't give exact dates, but it was some time—a couple of weeks or more after I installed a tire rack before I finished the job."

The great preponderance of the testimony is to the effect that the tire rack was installed some time in November and not later than December 1, 1936; and, if Nettles performed the last work 2, 3, or within 4 weeks thereafter, the last work was performed more than 60 days prior to the time the lien sued on was filed for record. It is true that later on in his testimony he said the last work was performed on January 8, 1937, but all of his testimony must be taken together in arriving at a just decision.

The burden was on plaintiff to show by a preponderance of the testimony that the lien was filed within the 60-day period allowed and provided by law. The lower court was of the opinion the testimony did not preponderate in plaintiff's favor, and we are unable to say that his opinion in that respect is incorrect.

The judgment of the lower court is therefore affirmed, with costs.