62 So.2d 81

**TROUARD v. CALCASIEU BUILDING MATERIALS, Inc.**

No. 40296.

Nov. 10, 1952.

Rehearing Denied Dec. 15, 1952.

Plauche & Stockwell, Lake Charles, for appellant.

Thompson, Lawes, Cavanaugh & Hickman, Lake Charles, for appellee.

FOURNET, Chief Justice.

This is an appeal by defendant, Calcasieu Building Materials, Inc., from a judgment of the District Court in favor of the plaintiff, Rufus J. Trouard, declaring the nullity and ordering the cancellation of a materialmen's lien in amount of $3,204.12, filed by defendant against plaintiff's property. The only issue is whether the lien was timely filed, the plaintiff's suit being predicated on his allegation that the structure was fully completed about March 1, 1950, whereas the lien was not filed until September 28, 1950, or 118 days after the period provided by law; the defense being that construction had not been finished at the time the lien was filed in that the building had not been completed in accordance with the plans and specifications approved by the Federal Housing Authority (referred to hereafter as the F.H.A.).

In December, 1949, the plaintiff, a contractor in the business of building houses for sale, began construction of a dwelling on a parcel of land owned by him in the city of Lake Charles, Louisiana, in accordance with plans and specifications by which he had secured a commitment from the F.H.A.—taken in the name of the Calcasieu Marine National Bank (which provided the interim financing), to be closed in the name of the person who would be found to purchase the house. Materials and supplies were furnished by various materialmen, among these being the defendant, whose last delivery was made on February 9, 1950, and consisted of materials and hardware for interior finishing. Work was terminated in early March, there having been two inspections (during the months of December and January) by the construction examiner for F.H.A. who approved the work as meeting the plans and specifications; however, final inspection to secure the F.H.A. loan was never made and that commitment was abandoned because by that time the plaintiff had found a prospective purchaser, L. G. Boatner, a veteran of World War II—these veterans are referred

to by the abbreviation G.I.—on whose behalf application for a loan had been made through the Veterans Administration, or V.A. (Anticipating that the purchaser might be a G.I., the plaintiff himself had made request for a V.A. appraisal even before construction had been commenced, leaving blank the "signature of the requesting party." It was this request which was subsequently processed in the name of Boatner.)

Boatner made a small down payment on the purchase price, moved into the house during March or April and resided there with his wife for a period of some six weeks. It was probably during his occupancy that the appraiser for the Veterans Administration made an inspection or appraisal of the premises and listed certain work which in his opinion should be done before the V.A. loan could be processed to completion. His recommendations, dated April 6, 1950, were submitted to the Regional Office of the Veterans Administration in New Orleans for its determination as to whether the work would be a prerequisite to a loan. All work required by this inspection can be classed as minor repairs except items to "Install canopy over front door," to place weather stripping at bottom of front and kitchen outside doors, and to "Grade lot and install 36 inch sidewalk," none of which were required in the F.H.A. plans and specifications. In due course the Regional Office approved the appraiser's recommendations as contained in his report

and the loan was to be forthcoming upon compliance by the plaintiff, but was never completed due to the fact that Boatner suddenly left Lake Charles without advising anyone of his intentions, and his whereabouts were unknown. The plaintiff subsequently sought another purchaser but undertook no further work on the premises.

On August 24, one Arneth Lard, also a G.I., became a prospective purchaser. Some days prior thereto the defendant had filed suit against the plaintiff seeking a personal judgment for materials furnished, the major portion having been used in construction of the house in question. On September 8, 1950, judgment for $3,406.66 was rendered and duly recorded. On that date the property was affected by a mortgage in favor of the Calcasieu Marine National Bank, recorded January 3, 1950, as well as other recorded judgments against the plaintiff in an amount exceeding the value of the property. Since defendant's recorded judgment already constituted a lien, the filing of its materialmen's lien affected only the ranking of these claims, and (in view of the impending sale) was for the obvious purpose of giving priority over the mortgage, recorded after construction was in progress, and the other recorded judgments antedating that obtained by the defendant.

The privilege accorded to materialmen and others with similar claims is found in LSA–R.S. 9:4812, which provides that a person furnishing service, material or labor for a building may cause to be recorded in

the parish where the work is done a writing evidencing his claim, "which recordation, if done within sixty days after the date of the last delivery of all material upon the said property or the last performance of all services or labor upon the same, by the said furnisher of material or the said laborer, shall create a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work or improvement * * *."

▮ The record clearly shows that when the defendant's lien was filed, the house had been completed for a period of almost seven months, and that since the end of construction no further work had been done on it by the plaintiff. However, in an effort to prove that the house had *not* been completed within 60 days of filing its lien, the defendant stresses the fact that the structure has never been accepted as meeting the requirements of either the F.H.A. or the V.A., though the plaintiff undertook construction with the idea that the specifications of one or the other of these agencies would have to be met in order that a prospective purchaser might secure a loan. He argues that labor was still being performed even as late as the date of trial in that weather stripping had recently been installed; and as further proof he shows that nailing of the floor joists remained undone, though required for a completed structure, which

omission was discovered by Lard, the second purchaser, some time after moving in; also, that Lard, according to his testimony, did not consider the house completed at the time he purchased it.

▮▮ We find no merit in defendant's contentions. The fact that requirements of a lending agency are not found to exist when a loan is sought constitutes no criterion in determining whether or not the building is a completed structure within the meaning of the Act. It is a matter of common knowledge that defects in workmanship may be discovered many years after a structure is to all intents and purposes completed; this does not mean that the privilege accorded those furnishing supplies and labor is thereby extended indefinitely. The materialman or laborer is protected for a period of 60 days from the date of acceptance in case the work is done by contract; if done by the owner, "the work is completed when the last material is furnished and the last labor is performed." National Homestead Ass'n v. Graham, 176 La. 1062, 1074, 147 So. 348, 352. In the instant case, not only was the building actually occupied as a dwelling shortly after its completion, but the changes recommended for a V.A. loan made no part of the specifications by which the house was built. The work undertaken subsequent to the filing of the lien was performed by Lard, who realized he would have to meet V.A. requirements to close a loan and, preferring to make the additions (such as the canopy and walk) to

 

suit his personal taste, agreed with the plaintiff, in consideration of a reduction in the purchase price sufficient to cover the cost of all changes, to do the work himself.

The plaintiff answered the appeal in this case, requesting that the judgment be amended so as to award him attorney's fees, as originally petitioned. Counsel has cited no authority by which plaintiff is allowed attorney's fees in a case such as this, and we know of none. The judgment of the district court in that respect will not be disturbed.

For the reasons assigned, the judgment appealed from is affirmed.