62 So.2d 507

**RATHBORNE LUMBER & SUPPLY CO.,
Inc. v. FALGOUT et al.**

No. 40645.

Dec. 15, 1952.

A. S. Cain, Jr., New Orleans, for defendant-appellant.

Dart, Guidry & Price and Taylor Caffery, New Orleans, and John E. Fleury, Gretna, for appellees.

HAMITER, Justice.

Pursuant to an unrecorded, written contract, Linus J. Falgout, a building contractor residing in Jefferson Parish, constructed a dwelling house for Edward Pelas on his

land in Plaquemines Parish of which he is a resident.

On September 9, 1947 Rathborne Lumber & Supply Co., Inc., which had sold and furnished to the contractor building materials that were used in connection with the contract, recorded in the mortgage records of Plaquemines Parish an affidavit asserting a lien and privilege against Pelas' dwelling and land to secure the payment of a recited balance due it of $2441.27. Thereafter, specifically on October 30, 1947, such company brought this suit in the District Court of Jefferson Parish praying for a solidary judgment against Falgout and Pelas in the amount of the mentioned balance, plus legal interest, and for maintenance and recognition of its lien and privilege.

The district court dismissed the suit as to Pelas, his exception to the jurisdiction ratione personae having been sustained. On plaintiff's appeal to this court, which presented for our consideration exceptions to the jurisdiction ratione personae and ratione materiae tendered by Pelas, we decreed that the suit be dismissed only as to the in rem part thereof (i. e. only insofar as it sought the enforcement of the material lien against Pelas' property), and we ordered that the case be remanded for further proceedings. See 218 La. 629, 50 So. 2d 295.

On the case's return to the district court defendant Pelas specially pleaded the prescription of one year. The plea was referred to the merits.

Following a trial of the merits plaintiff was awarded a judgment against Falgout and Pelas in solido for $2173.07 and further judgment against Falgout alone for the additional amount of $268.20. Only the defendant Pelas is appealing.

Appellant does not now deny that materials to the amount of the judgment rendered against him was sold to the contractor and used in the construction of his building. His defense here is that plaintiff failed in two particulars to meet the requirements of Section 12 of Act No. 298 of 1926, as amended by Act No. 323 of 1938 (now LSA–R.S. 9:4812), a strict compliance with the provisions of which was a prerequisite to its having a personal right of action against him. The Section, insofar as pertinent to this discussion, reads:

"When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the said owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required by this Act, then any person furnishing service or material or performing any labor on said building or other work may record in the office of the Clerk of Court or Recorder of Mortgages in the parish in which said work is being done or has been done, a copy of his estimate or an affidavit of his claim or any other writing evidencing same, which recor-

dation, if done within sixty days after the date of the last delivery of all material upon said property or the last performance of all services or labor upon the same, by said furnisher of material or said laborer, shall create a lien and privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have performed service or labor or delivered material in connection with the said work or improvement, as his interest may appear. Said lien and privilege, recorded as aforesaid, shall constitute a lien and privilege against the said property for a period of one year from the date of its filing, and may be enforced by a civil action in any Court of competent jurisdiction in the parish in which the land is situated and such right of action shall prescribe within one year from the date of the recordation of the privilege in the office of the Recorder of Mortgages; and the effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not been renewed within one year from the date of the recordation. Any person furnishing service or material or performing any labor on said building or other work to or for a contractor or sub-contractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, shall have a personal right of action against the owner for the amount of his claim for a period of one year from the filing of his claim, as provided in this Section, which right of action shall not prescribe within one year of the date of its recordation, or the reinscription thereof; * * *."

The foregoing Section. which is applicable here since the written contract between the owner and contractor was not recorded, offered to plaintiff two separate and distinct means for compelling Pelas to pay for the materials sold and delivered to Falgout and used in the construction, they being (1) a lien and privilege on Pelas' building and land (no lien and privilege is involved now in this cause, the in rem part having been dismissed, as aforestated) and (2) a personal right of action against him. However, a condition precedent for plaintiff's having the personal right of action, which it is here contending for, was the timely recording in the mortgage office of Plaquemines Parish of some written evidence of its claim. See Markel v. Walker, La.App., 4 So.2d 448, Markel v. C. W. M. Construction Co., La.App., 6 So.2d 768 and Hicks v. Tate, La.App., 7 So.2d 737. With reference to this prerequisite, appellant's counsel directs attention to the fact that plaintiff recorded its claim on September 9, 1947, which was approximately seventy days after the last delivery of materials by it to the Pelas job (June 30, 1947); and he argues that the recordation came too late. According to the statute the recordation of the claim is timely if made "within sixty days after the date of the last de-

livery of all material upon said property or the last performance of all services or labor upon the same"; and this provision has been interpreted to mean within sixty days after the final completion of the structure, regardless of the date on which the last labor was performed or last material furnished by the particular claimant. National Homestead Association **v.** Graham, 176 La. 1062, 147 So. 348. See also Trouard **v.** Calcasieu Building Materials, Inc., 222 La. 1, 62 So.2d 81.

With this interpretation in mind we seek to determine when Falgout completed the structure which he undertook to build for Pelas. The written contract, contained in the record, called for Falgout's building of a house measuring 26′ x 44′ according to certain stipulated specifications. These did not include the items of bath, plumbing, painting and kitchen sink, all of which Pelas himself planned to provide later at his convenience. The contract further recited that the total agreed price was $5720, payable as follows:

| "Down payment before work begins | $2000.00 |
| Second payment when house all framed | 1000.00 |
| Third payment when all outside finished | 720.00 |
| Fourth payment when inside started | 1000.00 |
| Fifth payment when house is complete in and out according to plan and contract | 1000.00 |
| Total | $5720.00" |

As the construction progressed Pelas made these payments and obtained written receipts from Falgout, all of which are in the record, the last receipt being one dated July 29, 1947 for $1000 and bears the notation "Paid in full". As before shown this final payment was to be made "when house is complete in and out according to plan and contract." On being asked during the trial if Falgout completed his contract around July 29, 1947, or the date of the last receipt, Pelas answered that it was before then—the exact date he did not know— "but it was sometime in July." Prior to giving that answer he had testified that around July 4, 1947 the house, according to the contract, was *nearly* finished. Falgout, on the other hand, was rather definite about the time of completion, he fixing it as July 15, 1947. This date is not inconsistent with Pelas' testimony and will be accepted as correct. And it follows that plaintiff's claim recorded on September 9, 1947 was timely, it having been within the prescribed sixty days.

The other and remaining contention of appellant, to quote from the brief of his counsel, is that "Plaintiff failed to reinscribe his lien as provided by law, and therefore, has lost any and every right he may assert, including the right to a personal action against the defendant, Edward G. Pelas, as well as against defendant's property." In this connection plaintiff concedes, as it must, that there was no reinscription of the claim within a year after the recor-

dation thereof. But its counsel answer appellant's contention with this statement: "We have kept the personal action alive in accordance with the terms of the statute by bringing suit within a year from the time the claim was filed in the mortgage records."

Under the provisions of Section 12 of Act No. 298 of 1926, as amended by Act No. 323 of 1938, LSA–R.S. 9:4812, as above shown, the timely recordation of a claim effects or results in two distinct benefits in favor of a materialman or laborer. The first is the creation of a lien and privilege against the property (with this we are not directly concerned herein). The second, which the statute provides for separately and apart from and after the first benefit, is the existence of a personal right of action against the owner. As to the latter, in which we are primarily interested, Section 12 states that the materialman or laborer shall have it "for the amount of his claim for a period of one year from the filing of his claim". Parenthetically, it may be said that this plaintiff asserted its personal right of action against the owner, by the institution of this suit, within the year following the filing of its claim, and that the suit has been prosecuted continuously since. Then Section 12, with respect to the second benefit, concludes with the recital "which right of action shall not prescribe within one year of the date of its recordation, or the reinscription thereof". Clearly this provision contains no requirement for a rein-

scription of the claim in order to preserve and keep effective a personal right of action that has been timely asserted. Whether the concluding recital purposes to permit a materialman or laborer to reinscribe his claim within a year after its filing and then to institute suit during the reinscription period and beyond that year, we need make no determination. The factual situation here does not demand it.

Appellant's counsel argues that the requirement for reinscription, even though the right of action be exercised within the year and thereafter continuously prosecuted, is to be found in that provision of Section 12 reading: "and the effect of the registry ceases, even against the owner of the property or the property itself, if the inscription has not been renewed within one year from the date of the recordation." There might be merit in this argument if the provision thus relied on appeared in connection with or after that portion of Section 12 which deals with the granting of the personal right of action. But it appears prior thereto. As contained in the 1938 Act, it is connected by a semi-colon with the language that prescribes for the creation of the lien and privilege (the first benefit).

In Shreveport Long Leaf Lumber Co., Inc., v. Wilson, 195 La. 814, 197 So. 566, 571, this court was concerned with the provision on which appellant's counsel relies. But we did not consider the question raised here of whether it related to the personal

right of action. The proceeding there was exclusively one in rem, no demand for a personal judgment against the non-resident owner having been made by the plaintiff material furnisher. The plaintiff had timely filed its claim, thereby creating a lien and privilege in its favor, and had instituted the in rem action within the year. More than a year having elapsed since the filing of the claim, and plaintiff having failed to renew or reinscribe it, the curator ad ·hoc for the non-resident owner invoked the provision under consideration and pleaded that plaintiff's lien and privilege, as well as its cause of action, had prescribed and per-empted. In opposing the plea plaintiff's counsel argued that reinscription under the provision was necessary only for the purpose of having the lien affect third parties. The court, hence, was confronted with the question of whether the lien and privilege was lost as between the parties (the material furnisher and the owner), after one year, by reason of the failure to reinscribe. In deciding the question in the affirmative, and in answering the argument of plaintiff's counsel, we observed:

"If the phrase 'even against the owner of the property or the property itself' had been left out, there might be room for counsel's argument. But apparently the lawmakers anticipated that the clause relating to the effect of registry might be construed to mean that the effect ceased only as to third parties, and for that reason purposely included the phrase, set off by commas, 'even against the owner of the property or the property itself', in order to remove all doubt as to what the general clause means. Our interpretation of the general clause relating to the effect of registry is that, if the *lien* is not reinscribed within one year, it ceases to exist and thereafter affects no one, not even the owner of the property." (Italics ours.)

We adhere to the view thus expressed in the Wilson case that the purpose of the provision relating to the effect of registry was to make clear that the *lien and privilege* affected neither third persons nor the owner if not reinscribed. Had the provision been intended to apply also to the personal right of action the Legislature undoubtedly would have positioned it in the statute following the creation of both of the mentioned benefits and, furthermore, would have phrased it in the plural as "the effects of the registry" because two effects do result from the timely recordation of the claim.

For the reasons assigned the judgment appealed from is affirmed.