85 So.2d 376 (1956)
J. H. CAIN et al., Plaintiff in Rule-Appellee,
v.
CENTRAL PLUMBING AND HEATING COMPANY, Defendant in Rule-Appellant.
No. 4131.
Court of Appeal of Louisiana, First Circuit.
February 3, 1956.
Lecompte, Hall & Coltharp, DeRidder, for appellant.
Kay & Kay, DeRidder, for appellee.
TATE, Judge.
The Central Plumbing and Heating Company, a partnership, appeals from judgment rejecting its claim for payment for certain plumbing supplies and services, and ordering cancellation of its lien therefor, recorded against certain property foreclosed under a mortgage held by plaintiffs, Mr. and Mrs. J. H. Cain. Subsequent to the sheriff's sale of said property, the aforesaid appellant partnership (hereinafter referred to as "Central") was made defendant in a rule to show cause why its lien in the principal sum of $900 should not be cancelled and erased, and praying for the court to determine any right of the lienholder to any part of the proceeds of the sale.
The sole question for our determination is whether Central's labor and materialman's lien was timely recorded to preserve its lien and privilege under LSA-R.S. 9:4801 et seq. as a furnisher of plumbing supplies *377 and services in construction of the building on the property seized and sold herein. More precisely, both parties admitting that in the case of a completed building the lien must be recorded within 90 days after the last work is done or material furnished, the question herein in this case of a building never completed according to specifications by the original owners is by what date, if any, is a materialman required to file his lien in order to protect his claim against the property?
To summarize the facts, as to which there is no conflict for appellate purposes: A carpenters' local union purchased some land and commenced the construction of a building thereupon as owner, which lot and building are the property seized and sold by the plaintiffs-creditors herein. Construction commenced in September of 1952. Afterwards, the $20,000 mortgage held by plaintiffs and foreclosed upon herein was executed and recorded on February 13, 1953. The process of construction was somewhat leisurely, because although the materials were purchased from union funds and from the proceeds of the loan, the bulk of the labor was contributed by the members of the local union from their spare time. Becoming financially embarrassed, the union was unable to complete and finish the upstairs of the building and the stairs leading thereto, according to the original specifications, although the remainder of the building was so completed. The incompleted work, estimated to cost $2,000, was chiefly finishing, such as a celotex ceiling, a finished floor above the secondstory sub-floor, permanent treads on the stairs, etc. The last actual work done upon the building was done not later than April of 1954, when the downstairs was painted and trimmed for purposes of renting it to a commercial user, which subsequently was done. All of Central's work had been performed prior to that time, although Central did not execute its lien for the remaining balance due of $900 until December 20, 1954, which was filed the following day in the mortgage records.
The following is the pertinent part of the statute, LSA-R.S. 9:4812, under which the lien and privilege as a furnisher of labor and supplies is claimed:
"When the owner * * * undertakes the work of construction * * * for which no contract has been entered into * * * then any person furnishing service or material or performing any * * * may record * * * a copy of his estimate or an affidavit of his claim * * * which recordation, if done within sixty days after the date of the last delivery of all material upon the said property or the last performance of all services or labor upon the same, by the said furnisher of material or the said laborer, shall create a privilege upon the building * * *." (Italics ours.)
Astutely, and with considerable logic, counsel for appellant urges that the language requiring recordation of the privilege within sixty days after the "last delivery of all material" or the "last performance of all services or labor" clearly means within sixty days of the date of final completion of work. Alternatively, it is urged that this date could be not later than the date the owner abandons his intention of completing the work. Thus, it is argued, Central's lien was timely recorded and primes plaintiffs' mortgage, which was not recorded until after the construction had commenced, since: (a) the building was never finally completed according to its original specifications; (b) allegedly, the owner had not abandoned his intention of finally completing said building when Central's lien was recorded on December 21, 1954.
Appellant relies upon National Homestead Association v. Graham, 176 La. 1062, 147 So. 348; Rathborne Lumber & Supply Co. v. Falgout, 222 La. 345, 62 So.2d 507; and Singer Lumber Co., Inc. v. King, La. App., 45 So.2d 567. Although the former two Supreme Court cases refer to the provision as meaning requiring the recordation of the lien within sixty days after "the final completion of the structure", the Supreme Court explained this phrase by stating in the Graham case at 147 So. 352: "The work is completed when the last material *378 is furnished and the last labor is performed."
In the Graham case for instance, the apartment house was never finally completed as originally planned due to financial difficulty of the owner, much the same as in the present case. In sustaining the lien filed on November 5, 1930, the Supreme Court pointed out that labor was performed on the building at least up through October 1. If the Supreme Court had intended to hold that the lienors had 60 days within which to record their privilege after work was "finally" completed in the sense contended by appellant, it appears that it was unnecessary to find that labor had been performed up through October 1, since the Graham building was never finally completed as planned any more than was the building in the present case. (The Falgout case simply quoted from the holding in the Graham case, but did not involve construction of the clause in question.)
Considerable support is given to appellant's position by the Orleans Court of Appeal decision reported at Singer Lumber Co., Inc. v. King, above cited. Perhaps, as appellee urges, this case can be distinguished, since the appellate and district court found that well within the period of sixty days before the lien was filed, the owners had not abandoned the project and were hoping to have the contractor recommence operations; whereas it is otherwise in the instant case for all practical purposes after April, 1954, when the downstairs was finished and for rent, and the upstairs was in use by the owner as a meeting room, and also rented for such purposes to two or three other unions. The Orleans Court, like ourselves, found it difficult that the time within which the lien must be filed should start running by an act evidenced by "the mere mental determination of the owner that the work is abandoned". We feel that the objective manifestation of the completion, namely, when the last work was actually done on the contract, is a more reliable indicia of completion of the work, i. e., the rule of the Graham case.
But further, our Supreme Court has rejected roughly similar arguments made on behalf of the lienholder in Trouard v. Calcasieu Building Materials, 222 La. 1, 62 So.2d 81, where although the building had been occupied for a few weeks by a purchaser and no work upon the building had been done upon the building for seven months before filing of the lien in question, the building was still incomplete and not finished in the sense that the federal lending agencies required certain additional minor work or repairs, such as installation of a sidewalk, etc., before approving it for the loan. While this case may be distinguished from the present, since the additional work and repairs were not required in the original plans and specifications, the decision indicates a construction so as not to extend the privilege indefinitely, and reaffirms the rule of the Graham case that if the work is done by the owner, "`the work is completed when the last material is furnished and the last labor is performed'", 62 So.2d 83. See also Hortman-Salmen v. White, 168 La. 1067, 123 So. 715, and (under earlier Act) Gleissner v. Hughes, 153 La. 133, 95 So. 529, especially on rehearing, 153 La. 145-146, 95 So. 533, to the effect that the time within which the lien must be recorded starts to run from the time the building is considered as completed, being when the final labor is performed or material furnished and it is occupied by tenants, even though technically the building is not completed or finished at that time.
Partially based on this last case, is a group of decisions holding the date of the last material furnished or work done for purposes of the builder's lien act to be the date by finishing of construction and by occupancy, when the building is treated or considered as complete, even though subsequent thereto minor repairs or corrections of defects or minor additions to the work are performed, Hayes Lumber Company v. H. M. Jones Drilling Co., 177 La. 626, 148 So. 899; Hicks v. Tate, La.App., 1 Cir., 7 So.2d 737; Bailey & Sons v. Western Geographical Co., La.App., 66 So.2d 424; *379 Electrical Contracting Co. v. Brown, La. App., 39 So.2d 100.
For similar reasons to those expressed in these casesto avoid an indefinitely lingering time within which to record liens to the possible unreasonable displacement of the rank of mortgages and other subsequent claims against said propertythe construction accorded the statute by the District Court and ourselves seems sounder than that urged upon us by appellant.
For the reasons above assigned, the judgment of the District Court herein is affirmed. Cost of this appeal to be paid by appellant.
Affirmed.