101 So.2d 238 (1958)
R. F. MESTAYER LUMBER COMPANY, Inc.,
v.
Jacqueline TESSNER, Wife of/and Peter M. Tessner.
No. 20956.
Court of Appeal of Louisiana, Orleans.
March 3, 1958.
Rehearing Denied March 31, 1958.
Henry F. Mestayer, New Orleans, for plaintiff-appellant.
*239 Richard J. Garvey, New Orleans, for defendants-appellees.
JANVIER, Judge.
Plaintiff, R. F. Mestayer Lumber Co., Inc., appeals from a judgment of the Civil District Court for the Parish of Orleans dismissing its suit for solidary judgment against the defendants, and declaring the nullity and ordering the cancellation of a materialman's lien in the sum of $612.43, which was recorded by the plaintiff corporation on January 25, 1956, in the office of the Recorder of Mortgages for the Parish of Orleans in Book 1873, folio 591.
Several issues are presented, first, and most important of which is whether the lien was recorded within the time required by LSA-R.S. 9:4812, where no contract is recorded and no bond is required of the contractor.
Another issue arises over the question of whether all of the materials were delivered on the premises of the defendants, and a third issue is presented by the contention that certain checks which were given by the defendants to the contractor and "cashed" for him by the plaintiff corporation, should have been credited to the purchases made by the contractor and delivered on the premises of the defendants.
As already stated, the most important of these issues is presented by the contention that the lien was not recorded within the 60 days required by the cited statute which provides that a building is subject to a lien of the materialman who records his lien "within sixty days after the date of the last delivery of all material upon the said property or the last performance of all services or labor upon the same, * * *."
The contractor, who was employed to do the work, was Clarence Hall, and it is shown that at some time before the completion of the contemplated work, probably on November 20, 1955, he discontinued work, and, on November 29, 1955, was notified by the owners that he was not to complete the work.
The lien was recorded on January 25, 1956, which of course was five days more than 60 days after the discontinuance of the work by the contractor (November 20, 1955). However, during the month of December, 1955, Mr. Mestayer, the President of the plaintiff corporation, visited the premises and found, at that time, that some work remained to be done. While Mr. Mestayer could not say just what work had not been completed, he, referring to the owner, Mr. Tessner, said "he had a lot of work to do yet," and he further said that he saw someone actually working in the building. If there were any doubt on this subject, however, it is dissipated by the testimony of Mr. Tessner himself who remembered the visit of Mr. Mestayer; said that it was probably during December, 1955, and when asked whether the work had been completed, said: "No indeed, as he (Mestayer) can tell you."
Since, at that time, the original contractor, Hall, had been discharged and since most of the work had been done, counsel for defendants argues that when the lien was recorded, more than 60 days had elapsed from the discharge of the contractor and from the time at which the work had been practically completed and that consequently the lien was recorded too late. In support of this argument counsel relies upon the decision of our Brothers of the First Circuit in Cain v. Central Plumbing and Heating Company, La.App., 85 So.2d 376, 377. There, it is true, it was held that, though the work originally contemplated had not been completed, in determining whether the lien had been filed in time, the time at which the work was abandoned should be accepted as the starting time for the running of that 60-day period. The facts in that case justified the conclusion reached by that Court. There the building was being erected by a carpenters' labor union for the use of the union and, as a result, the "process of construction was *240 somewhat leisurely * * *." The reason for this was that
"although the materials were purchased from union funds and from the proceeds of the loan, the bulk of the labor was contributed by the members of the local union from their spare time."
The union became financially embarrassed and "was unable to complete and finish the upstairs of the building and the stairs leading thereto," and apparently it abandoned its plans to continue the work, but completed the downstairs so that it might be used commercially. It then rented it to a tenant. Since the work was abandoned and there was no definite determination to complete it at any time, obviously the Court was justified in concluding that the lien should have been recorded within 60 days of the time at which the abandonment was made by the renting of the property to a commercial tenant.
In the case at bar there was never any determination to abandon the building. The work was continued after the discharge of the first contractor and the lien was recorded well within a 60-day period, which had not commenced even when Mr. Mestayer visited the premises in December since the owner himself declared that at that time it had not been completed.
Another case relied upon by the defendants is Trouard v. Calcasieu Building Materials, Inc., 222 La. 1, 62 So.2d 81, 82. There the building to all intents and purposes had been completed more than 60 days before the recordation of the lien. The Supreme Court said:
"The record clearly shows that when the defendant's lien was filed, the house had been completed for a period of almost seven months, and that since the end of construction no further work had been done on it by the plaintiff. * * *"
It appeared that there were certain minor defects which had to be corrected and which were discovered not by the original owner, but by the second purchaser "some time after moving in." These defects were found to exist and correction was required by the Federal Housing Authority and the Veterans Administration through which organization the funds had been derived. The Supreme Court said:
"* * * The fact that requirements of a lending agency are not found to exist when a loan is sought constitutes no criterion in determining whether or not the building is a complete structure within the meaning of the Act. * * *" LSA-R.S. 9:4812.
The facts in that case are easily distinguishable from the facts which we find here.
Our Brothers of the First Circuit, in their decision in Cain v. Central Plumbing and Heating Company, supra, seem to have found some difficulty in agreeing with the conclusion reached by us in Singer Lumber Co., Inc. v. King, La.App., 45 So.2d 567, 570, though they did not find it necessary to disagree. In the Singer case work on the building had been discontinued and the owners had decided to abandon the project but had done nothing actively or passively to give evidence of his determination to abandon. There was nothing to indicate that no further work would be done and, for some time, they had been attempting to have the work completed, and during that time "had not abandoned the project and were still hoping to be able to have the contractor recommence operations." We concluded that where there is no definite abandonment and the owner still hopes to be able to continue the work, the 60-day period within which the lien must be recorded does not commence to run until it becomes evident that the work has been abandoned. Where, as in the Cain case, abandonment is made evident by the action of the owner in taking over the property and renting it to a commercial user, or, as in the Trouard case, where, though there remained minor corrections to be made, "the house had been completed for a period of almost seven months * * *," the lien *241 must be recorded within 60 days of the abandonment, as in the one case, or of the taking possession of the building, as in the other.
In the case at bar the work had been by no means completed more than 60 days before the day on which the lien was recorded. We conclude that the lien which was recorded on January 25, 1956, was well within the 60-day period.
The question of how much of the material was delivered on the premises must next be considered.
Seven dray receipts are produced and the amounts of these dray receipts total $762.43. Admittedly the plaintiff corporation received one payment of $150 which it credited to this account, leaving the balance, $612.43, on which this suit is based.
Defendants contend that the record does not definitely show that the material was delivered on the premises and used in the work. The record does show that all of the material was delivered on the premises except that there should be eliminated from the charge the amount shown on one dray receipt of $109.65. On this receipt are the words "self haul", and we were told that these words indicate that that particular material was not delivered on the premises by the plaintiff but was called for and received by Willie Hammett who is shown to have been an employee of the contractor Hall. At that time Hall was engaged in at least one other job and Hammett, his employee, worked on both jobs. We cannot conclude from these facts that this particular delivery was made on the premises. All of the other deliveries are shown to have been made on the premises, and the presumption is that the materials delivered on the premises were used in the work.
In Hortman-Salmen Co., Inc., v. Raymond, 13 La.App. 490, 127 So. 452, we held that proof of delivery on the premises is all that is required of the materialman and that such proof of delivery places upon the owner the burden of showing what material did not actually go into the work. See, also, Allen B. Cambre Lumber & Supply Co. v. Loomis, La.App., 94 So.2d 908.
A last contention of the defendants is that two checks which were given by defendants to the contractor Hall, one for $300 and one for $200, should have been credited by plaintiff corporation to the account of Hall for purchases made for material to be used in the work which he was doing for the defendants. Both of these checks were made payable to Hall, the contractor, by Tessner. The plaintiff corporation cashed the checks for Hall. The record convinces us that it is customary for furnishers of material in such cases to cash checks for contractors who make purchases from them so that the cash may be used by the contractors in paying labor, etc. The mere fact that the Mestayer Lumber Company received these checks which were made payable to Hall and cashed them for him did not place upon that corporation the duty of crediting the amounts of the checks to this particular account.
Hall, the contractor, was in no sense the agent of Mestayer Lumber Company with authority to receive payments for it. Tessner himself says that he did not even know where Hall was purchasing the lumber. It follows that he could not have considered that Hall was the agent for the lumber company and that when he gave Hall checks for amounts due to Hall he was giving them to Hall as the agent of the plaintiff corporation.
Our conclusion is that plaintiff is entitled to judgment and to the recognition of its lien in the sum of $502.78.
It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and there is now judgment in favor of plaintiff, R. F. Mestayer Lumber Company, Inc., and against defendants, Jacqueline Tessner, wife of, and Peter M. Tessner, in the full sum of $502.78, with legal interest from judicial demand, and with recognition *242 of a lien and privilege on the premises 5804 Mandeville Street, located on lot 16, Square 4615, bounded by Mandeville, Pressburg, Athis and Marigny Streets, in the City of New Orleans, the inscription of which is recorded in Mortgage Office Book 1873, Folio 591, and for all costs.
Reversed.