FRUGÉ, Judge.
This case represents one of several (Morgan Roofing Company, Inc. v. West Brothers of DeRidder, Louisiana, Inc., et al.; Lard Electric Company, Inc. v. Miller & Associates Construction Co., Inc., et al.; Thomas F. Webb v. W. W. Development Company) cases consolidated and tried together by the District Court and now all before this court on appeal. All arise from unpaid items due to subcontractors on a building that each had done work upon. After liens were filed, separate suits were instituted against both the prime contractor and the building owner. These separate suits were consolidated. In each case the District Court awarded individual judgments against the prime contractor, but denied judgment against the owner. Plaintiff subcontractors have appealed this latter determination — only W. W. Development Co., West Brothers of DeRidder, La., Inc., and Beaumont-Calder Company (owners) have responded to the appeal.
In these cases we are concerned with the timeliness of the liens (under LSA-R.S. 9:4812, a prerequisite to personal action against the owner) filed by the plaintiffs against property jointly owned by West Brothers of DeRidder, La., Inc., and Beaumont-Calder Company, who comprise the joint venture known as W. W. Development Company. We find them timely filed.
The pertinent facts of this case are: W. W. Development Company, as the developer of Park Terrace Shopping Center, entered into a lease with Morgan and Lindsey on May 7, 1969, and as part of the contract it agreed to erect a store building for the tenant at the shopping center. Shortly thereafter, on May 21, 1969, W. W. Development Company entered into a building contract with Miller and Associates Construction Company (prime contractor) for the erection of the store building for Morgan and Lindsey. The building contract was written but unrecorded and no bond was provided. The work began almost immediately.
It is important to point out here that shortly after the contract was signed and before any work was done, some confusion occurred as to whether the installation of air conditioning, sub-surface drainage, downspouts, and an overhead sprinkler system was included in the bid. The original contract, though unchanged as to its written form, was orally amended to include these things and the original contract was increased from $143,000 to $160,000. The defendants, in their brief, admit that the original plan and specifications for the building consist of this contract thus amended. The contracts entered into between the principal and subcontractors were on the basis of this amended original plan. Mention should also be made here that there were subcontractors, other than plaintiff’s, who performed work under the contract. Their claims are not before this court.
In this case, the following liens were filed: Lard Electric Company, Inc., March 23, 1970; Thomas F. Webb, March 30, 1970; and Morgan Roofing Company, Inc., March 26, 1970. The building was occupied by the tenant, Morgan and Lindsey, in the early part of January, 1970.
The defendants-appellees maintain that the latest date on which the lien period could begin to run was Jan. 15 or 16, 1970. We find the following contract work was performed after those dates.[1]
*618 Flashing was installed and sealed around a roof hatch no earlier than January 29, 1970 (date substantiated by Morgan’s records) and possibly as late as February 8, 1970 (date given by store manager of Morgan and Lindsey, Mr. Trout). The assistant manager, Mr. Stephens, testified that the flashing was done “. . . after the store opened.” Defendants’ agent, Mr. Ed Brandt, testified that he agreed the flashing was not done until after the store opened (the store opened on January 29, 1970). This flashing consisted of sealing heavy-weighted asphalt impregnated paper around the roof hatch with hot melted roofing material and gravel. Three men worked two hours each on this project, which was part of the original contract work. The roof hatch itself was not installed until the latter part of January, 1970.
Mr. Trout stated that between January 15 and 29, air conditioning duct work was extended into one of the offices so as to provide air conditioning and heat therein. This work was delayed because of the late shipment of a fan. Mr. Stephens testified that he arrived at the store on January 5, 1970, and that for several weeks thereafter, the air conditioning men did duct work in several parts of the store and installed all but one of the grills. Bars were placed across them the week before the store opened. The missing air conditioning grill was installed on February 10, 1970, by workmen for Dubois Sheet Metal Works— the subcontractor who furnished labor and materials for the duct work on the air conditioning. The delay in installing the grill was due to the fact that the first grill received for the spot was damaged and had to be reordered. The wrong type of grill was then shipped and it had to be reordered again. This duct and grill work was original contract work.
Mr. C. M. Long, president of C. M. Long, Inc. (the subcontractor responsible for ceiling work) testified that on January 23, 1970, two of his employees worked four hours each installing the ceiling grid system and four hours each on ceailing molds —all contract work. The record also shows that two of his men worked eight hours each on the ceiling on January 28, 1970, but that on this date all the work was not completed. The work which was left undone at this time was the closing in of ceiling tile around the one air conditioning grill that had not come in and some of the same type of work around another grill. When this last grill was installed, Mr. Leland Stanley, the prime contractor’s superintendent, informed Mr. Long that he would save Mr. Long a trip and personally close in the ceiling tile around both grills. On February 10 or 11, 1970, he worked approximately two hours installing fifteen pieces of ceiling tile. This was all contract work.
Mr. Sidney Armistead, the accountant for Lard, testified that a special sun ray lamp, part of the original contract work, was not received until March 12, 1970, due to a trucker’s strike in the east. It was installed shortly after delivery. Mr. Brandt testified that the running of conduit and wiring up to the conveyor was original contract work. Mr. Allen Mason, an electrician for Lard, testified that he did this work and that it was not done until January 22 and 23, 1970.
Mr. Thomas F. Webb, president of the Webb-Kote Painting Company,’ which was the subcontractor responsible for painting, testified that four men worked eight hours each on contract work (not touch-up work) on both February 9 and 10, 1970. This was as follows: January 9, five hours painting posts, twenty-four hours painting exterior doors and trim, two hours painting walls, and three hours varnishing trim; January 10, four hours painting exterior trim, eight hours painting posts, sixteen hours painting stairs.
Mr. Glenn Webb, a painter-foreman for Webb-Kote, corroborated this and testified that only a very small portion of this work was touch-up work, with the rest being finishing coats (primer coats having previously been applied). This included put *619 ting the last coat on a trash room which Mr. Trout admitted had had some painting done in it, possibly as late as three or four days after the store’s opening. (We submit it was more like eight or nine days after opening day).
The only painting work challenged by appellees as not having been done is the work on the posts and stairs. Defendants offer the testimony of Mr. Trout and Mr. Stephens that they did not remember such work being done on February 9 and 10. However, we are convinced that such work was done and that the negative testimony of these two store managers is borne of their preoccupation with the hectic activities and responsibilities surrounding the opening of the store.
Thomas Webb admitted pulling off the job on January 16, 1970, because so many workers, both subcontractors (doing finishing and corrections of defects) and Morgan and Lindsey people, were working in the store, that it was not practical to paint, i. e., some things could not be gotten to and some things (hallways, doors, etc.) even when gotten to, were scratched up and the painting work destroyed by other workers. He checked back on this activity periodically and when it died down, he returned.
We believe that Mr. Webb was in good faith and justified in pulling off the job under such circumstances. Painting is a type of work peculiarly susceptible to impairment, necessitating retouching, and cannot be adequately conducted where a multiplicity of activities, including the random piling of boxes and performance of other work blocking access to unpainted surfaces, are occurring. We agree with Mr. Webb’s statement that “. . . it is hard enough to make a dollar without having to go back and do it over and over/’
The arguments offered by defendants-appellees to refute the effect of the performance of the above-listed work fall into three categories: first, that the work was not done; second, if done, it was performed late due to bad faith delays on the part of the subcontractors; third, if done and reasonably delayed “it was minimal and, under the jurisprudence, certainly not sufficient to extend the time for filing liens.”
We find that the listed work was done and that no unreasonable or unjustified delay provoked performance on the days indicated. The work performed was original contract work and occurred at dates ranging between January 16, 1970, until after March 12, 1970.
Since the contract between the owners and principal contractor was not recorded and no bond was filed, the statute applicable to this case is LSA-R.S. 9:4812. The determination which must be made in this case, in light of this statute, is whether plaintiff’s lien was timely filed. The language of LSA-R.S. 9:4812 appropriate to such a determination is the following:
“When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services of the said laborer, shall preserve a privilege *620 upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear. (Emphasis added).
We believe that this case is controlled by our decision in Albert K. Newlin, Inc. v. Weingarten’s Markets Realty Co., 253 So. 2d 594 (La.App.3rd Cir., 1971) — (which also involved Miller and Associates Construction Company as the prime contractor), in which we stated:
“Within the contemplation of the above cited sections of the Revised Statutes, the 60 day period allowed for filing liens begins to run at, or not later than, the time the building is considered or treated as having been completed. The correction of construction defects which may appear from time to time after the building is considered to have been completed, are not to be considered as being part of the labor or materials furnished for the construction project, and thus the performance of mere 'corrective’ work after the building has been completed will not extend the time allowed for filing liens. (Citations omitted)”.
There, the lien had been filed on March 26, 1970. The owner had occupied the building since September 8, 1969, and on October 22, 1969, plaintiff-lienor had informed the owner that all work had been completed. However, at this time, some contract work still remained to be done— unit drains and a damper motor had to be installed on the air conditioning work. This was not done until January 29, 1970.. We found as follows:
“We have concluded that the work performed and the materials furnished by plaintiff on January 29, 1970, constituted a part of the construction of the building and not merely corrective work.” (p. 596).
We further recognized that “. . . it is a common practice for the owner to take possession of and to begin using the building before the construction has been completed.” p. 597.
We, therefore, found that the lien period had not begun to run until January 29, 1970, and that the lien was timely filed. Likewise, in the case before us, contract work had been performed well within 60 days of the filing of all the liens.
Also pertinent to the case before us is the rule that the lien of any lienor will be timely if filed within 60 days after the performance of the last labor or furnishing of the last materials by any potential lienor under the same general contract, even though the filing lienor rendered his last services more than 60 days before his filing. National Homestead Ass’n v. Graham, 176 La. 1062, 147 So. 348 (1933); Rathborne Lumber & Supply Co. v. Falgout, 222 La. 345, 62 So.2d 507 (1952).
On the basis of the above authority, we hold that the judgment of the lower court, insofar as it found plaintiff’s lien untimely filed, was incorrect. Plaintiff’s lien is timely filed and the effects thereof were maintained by timely recordation of the notice of filing suit, as provided for in LSA-R.S. 9:4812. Suit was filed based on this lien, the liability of the prime contractor, and the personal liability of defendants-appellees within one year of the filing of the lien. Therefore, according to LSA-R.S. 9-4812, defendants-appellees are liable in solido with the prime contractor for services performed and materials delivered on appellees’ property under the contractor’s contract with plaintiff (such contract being issued under and as a part of the prime contract work).
The judgment appealed from, insofar as it found plaintiff’s lien untimely filed, is reversed and the case is remanded for a determination of the amount of liability consistent with the findings of this court. Appellees are to pay all costs of this appeal.
Reversed in part and remanded.

. Some other items of work offered by plaintiff as extending the lien period as to claims under the original contract were not capable of such effect, due to the fact that they were either items which were done for Morgan & Lindsey on a cost-plus basis or additions under amendments made to the original contract after work had started and were not therefore part of the original contract work.