GUIDRY, Judge.
Defendants, James W. Welch, Jr. and United States Fidelity and Guaranty Company, appeal from a judgment which condemns them, in solido, to pay unto plaintiff the principal sum of $15,830.95, together with $50.00 for the cost of filing a labor and material lien.
The facts giving rise to this litigation are not seriously disputed.
Between the year 1969 and the early part of the year 1973, Peter Tattersall (Tatter-sall) acquired in several acquisitions some *1303 500 acres of land which is referred to in the record as “Rosalie Plantation.” Tattersall’s purpose in acquiring this land was to develop a thoroughbred horse farm, that is to say a facility devoted to the breeding, raising, training and sale of thoroughbred race horses. Shortly following his acquisition of the initial tract of land in 1969 Tattersall contacted plaintiff, who was an earthmov-ing, sand and gravel contractor, to provide services in connection with the development of Rosalie Plantation. The agreement between plaintiff and Tattersall was a rather loose verbal arrangement whereby the former would provide dirt for the foundations of buildings, grade and maintain existing roads, build roads, clean ditches, etc., as these services and materials were required. Such services and material were furnished by plaintiff to Tattersall on an open account basis, payment being made by Tat-tersall to Daigrepont from time to time as funds were available. This rather informal arrangement began about the year 1970 and finally terminated on January 22,1975, shortly following which latter date Tatter-sall sold the entirety of Rosalie Plantation to James W. Welch, Jr. The sale to Welch was consummated on February 12, 1975. On March 7, 1975, plaintiff caused to be filed a lien in the amount of $16,180.50 against the whole of Rosalie Plantation, the lien being filed pursuant to the provisions of LSA-R.S. 9:4812[1] to secure the payment *1304 of labor and materials furnished for the construction of a racetrack.[2] Subsequent to the recordation of this lien same was bonded (LSA-R.S. 9:4842).[3] The bond was executed by Messrs. Tattersall and Welch as principals and United States Fidelity and Guaranty Company, as surety. There was no recourse against Tattersall, as he became a voluntary bankrupt in August of 1975. This suit was dismissed as to Tattersall by consent of all parties.
It is not disputed that Tattersall, at no point in time, had a master plan for the development of Rosalie Plantation. Rather, the horse farm was developed sporadically, over a period of some six years, to such extent and at such times, as funds permitted and necessity required. The development of Rosalie Plantation is best described by the testimony of Tattersall as follows:

“Q. Mr. Tattersall, what was your intention when you purchased this place?

[[Image here]]

A. My intention was to make money and make a living.

Q. Okay. How were you going to do that with this farm?

A. Any number of ways. I just sort of picked them up as I went along. My business changed greatly over a period of time. I don’t — I don’t see how I could say that when I bought the farm that I had the same intentions as I had seven years later or eight years later.
[[Image here]]

Q. Did you have plans to expand any further than this?

A. We expanded out of the back of our pocket. By that I mean, you know, overall plans, no . .”
Plaintiff testified in the same vein. Daig-repont stated:
“Q. Again, according to your testimony, there was no master plan involved _ .?

A. No master plan. No, Sir.

[[Image here]]

Q. All right, sir. So, the work you did for Mr. Tattersall was not conducted pursuant to or in accord with any plan that you started off with?

*1305
A. No.”

The record reflects that most of the improvements existing on Rosalie Plantation at the time of sale in February of 1975, were completely constructed and in use by early 1973. The lien filed by Daigrepont covers services and material furnished during the period October 26, 1973 to January 22, 1975. The only improvements made on Rosalie Plantation during this period were completion of a structure known as the “White Barn”; the building of a road to the “White Barn”; construction of a “breaking pen”; and, construction of the race track. All of these improvements were completed and the facilities in use by September of 1974. The only labor and materials furnished by plaintiff following September of 1974, were for maintenance of existing facilities. The last maintenance work performed by plaintiff in the year 1974, occurred on November 13th when he charged the sum of $62.50 for five (5) hours of work for grading an existing road. Plaintiff’s lien reflects only two items in the year 1975, those being as follows:
“1-22-75 5 yd red clay to white barn stable $17.50”
“1-20-75 5 yd river sand to braking (sic) lot $10.00”
The delivery of this material was purely for maintenance of existing facilities. This cannot be disputed. Mason Grasty, farm manager, testified that the “White Barn”, as well as the “Breaking Lot” had been in use, at least as early as September of 1974. The red clay was used to repack horse stalls in the “White Barn” in preparation for the foaling season and the river sand was to be added to the “Breaking Lot” to prepare for the breaking of the yearlings.
The trial court concluded that plaintiff’s lien was timely filed (within sixty days after the date of the last delivery of material upon said property); was valid to the extent of $15,830.95; and, affected the whole of “Rosalie Plantation”. In so concluding the trial court determined that there was one continuous “project”, i. e., “establishing of a horse-breeding farm” which commenced in the year 1969 and extended to the last delivery of materials on January 22, 1975. We conclude that this determination is erroneous and reverse.
The trial court relied on the case of Central Lumber Company v. Schroeder, 164 La. 759, 114 So. 644 (1927). In our view the trial court’s reliance on the cited case is misplaced as same is clearly inapposite from a factual standpoint. In Central, supra, a materialman-builder had agreed with a homeowner to repair and restructure a house damaged by fire. The homeowner owned contiguous lots to the lot upon which the house was located. While work was proceeding on the house, the homeowner engaged the builder to construct fencing and other improvements on the adjacent lots. The court in holding that the lien was valid as to all work and extended to all lots concluded that the construction constituted a single continuous transaction for the improvement of what was considered a single piece of property. We consider it significant that in Central, at some point in time after initial construction began a so-called “master plan” for the improvement of the whole property was decided upon; the construction on the project was continuous from the initial date of construction to completion; and, a period of only six (6) months elapsed from date of initial construction to the filing of lien.
In the instant case a so-called “master plan” for the development of Rosalie Plantation was never decided upon. Quite to the contrary the development of Rosalie Plantation was of a sporadic nature, with several months and perhaps as much as a year intervening between the completion and use of one facility and the construction of another. The record makes it quite clear that the development of Tatter-sail’s horse farm was piece-meal and that following initial construction additional facilities were built as the necessity arose and finances permitted. We consider it most significant that, if as determined by the trial judge, the development in this case was one continuous transaction the period within which liens could be filed would have extended from the year 1969 to the year 1975, or a period of some six (6) years. *1306 Such conclusion, in our view, is clearly contrary to well recognized legal principles to the effect that (1) lien statutes being in derogation of the common rights of owners and mortgagees, must be strictly construed against the lienors and liberally interpreted in favor of persons whose common rights are thereby impinged upon; Courshon v. Mauroner-Craddock, Inc., 219 So.2d 258 (La.App. 1st Cir. 1968) cert. den., 253 La. 761, 219 So.2d 778 (1969); McGill Corporation v. Dolese Concrete Company, 201 So.2d 125 (La.App. 1st Cir. 1967); Alside Supply Company v. Gervais, 303 So.2d 584 (La.App. 4th Cir. 1974) cert. den., 305 So.2d 545 (La.1975); and, (2) the privilege granted by lien statutes cannot be extended for an indefinite and lingering time to the possible unreasonable displacement of the rank of mortgages and other claims against said property. Cain v. Central Plumbing and Heating Company, 85 So.2d 376 (La.App. 1st Cir. 1956); Trouard v. Calcasieu Building Materials, 222 La. 1, 62 So.2d 81 (1952).
For the above reasons we reject the trial court’s conclusion that the services and material furnished by plaintiff to Tat-tersall were furnished in connection with one single continuous transaction for the establishment of a “horse-breeding” farm on Rosalie Plantation. We ultimately conclude that defendants have clearly sustained their defense of several agreements and contracts involving the furnishing of labor and materials for several distinct improvements. As aforestated, the last such improvements constructed on Rosalie Plantation were completed and in use by September of 1974. Plaintiff’s lien was not filed until March 7, 1975. This filing was clearly untimely and did not serve to preserve any privilege in favor of plaintiff, unless it be considered that the furnishing of 5 yards of river sand to the “breaking lot” on January 20, 1975 and 5 yards of red clay to the “White Barn” on January 22, 1975, constitute the “last delivery of material” for these improvements within the in-tendment of LSA-R.S. 9:4812. We have no difficulty in finding that the delivery of materials last referred to did not have the effect, under the circumstances of this case, of extending the time within which plaintiff could file a lien under the cited statute. The cases are legion holding that the date of the last material furnished or work done for purposes of the builder’s lien act is the date when the building or other improvement is treated or considered as complete and is occupied or otherwise placed in use, irrespective of whether the improvement is not technically complete and there are minor repairs or corrections of defects or minor additions to the work yet to be done. Hayes Lumber Company v. H. M. Jones Drilling Co., 177 La. 626, 148 So. 899 (1933); Bailey & Sons v. Western Geographical Co., 66 So.2d 424 (La.App. 2nd Cir. 1953); Cain v. Central Plumbing and Heating Company, 85 So.2d 376 (La.App. 1st Cir. 1956); General Lumber & Supply Co. v. McLellan, 200 So. 501 (La.App. 1st Cir. 1941).
Since we conclude that plaintiff did not preserve a valid lien against Rosalie Plantation it must follow that his suit against defendants on the bond furnished by the latter pursuant to LSA-R.S. 9:4842 is without merit. This holding renders unnecessary our consideration of the additional contentions raised by plaintiff-appellee’s answer to the appeal, i. e., whether attorney’s fees are due successful lien claimants under the private works statute; and, whether interest is due upon a lien claim from date of judicial demand or from the date of the filing of the lien.
For the above and foregoing reasons the judgment of the trial court is reversed and set aside and it is now ordered, adjudged and decreed that plaintiff’s suit against defendants be dismissed with prejudice. It is further ordered that upon finality of this judgment the surety bond furnished by defendants and recorded in Book 748, page 839, mortgage records of Rapides Parish, Louisiana, be cancelled. Finally, it is ordered that all costs at the trial level and on appeal be borne by plaintiff-appellee.
REVERSED AND RENDERED.

. § 4812. Failure to record contract; record by claimant; period of privilege; rank
When the owner, or his authorized agent, undertakes the work of construction, improvement, repair, erection, or reconstruction, for the account of the owner, for which no contract has been entered into, or when a contract has been entered into but has not been recorded, as and when required, the owner or his authorized agent may file an affidavit that the work has been completed, then any person furnishing service or material or performing any labor on the said building or other work may record in the office of the clerk of court or recorder of mortgages in the parish in which the said work is being done or has been done, an affidavit of his claim, which recordation, if done within sixty days after the date of the affidavit of completion or if no affidavit of completion is filed within sixty days after the date of the last delivery of all material upon the said property or the last furnishing of services or the last performance of labor upon the same, by the said furnisher of material or services or the said laborer, shall preserve a privilege upon the building or other structure and upon the land upon which it is situated, in favor of any such person who shall have furnished service or material or performed any labor in connection with the said work or improvement, as his interest may appear. The said claim, recorded as aforesaid, shall preserve a privilege against the property for a period of one year from the date of its recordation, and may be enforced by a civil action in any court of competent jurisdiction in the parish in which the land is situated and such cause of action shall prescribe within one year from the date of the recordation of the claim in the mortgage records of the office of the clerk of court or the office of the recorder of mortgages. The effect of the recordation of the claim shall cease and the privilege preserved by the recordation shall perempt unless a notice of filing of a suit (giving the name of the court, the title and number of the proceedings, and date of filing, a description of the property and a reference to the recorded claim), on said claim is recorded within one year from the date of the recordation of the inscription of said claim. Such notice of filing suit shall preserve the privilege until the court in which the suit is filed shall order the cancellation of the said inscription of the said claim and the notice of the filing of suit on said claim or until the claimant authorizes the clerk of court or recorder of mortgages to cancel the said inscriptions.
The foregoing provisions shall not in any way interfere with or abrogate the right given an owner under R.S. 9:4842 to bond out any claim or claims recorded, nor shall said provisions apply to any claims recorded or lawsuits existing on July 27, 1966.
Any person furnishing service or material or performing any labor on the said building or other work to or for a contractor or subcontractor, when a contract, oral or written has been entered into, but no contract has been timely recorded, shall have a personal cause of action against the owner for the amount of his claim for a period of one year from the aforesaid recordation of his claim, which cause of action shall prescribe one year after the date of said recordation. This shall not interfere with the personal liability of the owner for material sold to or services or labor performed for him or his authorized agent.
The said privilege shall be superior to all other claims against the land and improvements except taxes, local assessments for public improvements, a bona fide mortgage, or a bona fide vendor’s privilege, whether arising from a sale or arising from a sale and resale to and from a regularly organized *1304 homestead or building and loan association, if the vendor’s privilege or mortgage exists and has been duly recorded before the work or labor is begun or any material is furnished. The claim for wages of a laborer for work done by him on any building, shall, when properly presented and recorded by him in accordance with the provisions of this Sub-part, preserve in his favor a privilege on the land and improvements which will prime the right of mortgagees or vendors. As amended Acts 1966, No. 405, § 1.

. Although the lien refers to unpaid labor and materials which were used in and performed for the construction of a racetrack on Rosalie Plantation, the record indicates that the unpaid services and materials actually concerned for the most part, other projects on Rosalie Plantation. The trial court concluded that the lien was sufficiently specific and served as a valid lien for all unpaid labor and material, regardless of where expended on Rosalie Plantation. Our ultimate disposition of this matter makes it unnecessary that we consider appellant’s contention that it was improper to allow plaintiff to prosecute his claim for unpaid services and material unrelated to the race track.

. § 4842. Bonding of claims by property owner
A. Whenever an owner of real property shall have entered into a contract to perform private works under the laws of this state governing the letting and awarding of such contracts and in conformity with the requirements thereto, the owner of the property on which the said private work is being performed shall have the right to bond any claim or claims which may be filed or recorded against said work, whether by laborers, ma-terialmen, suppliers, sub-contractors or general contractors, by depositing with the clerk of court of the parish in which such claims are filed or recorded, a bond with surety signed by any surety company authorized to do business in the state for an amount equal to the claim, including the cost of preparing and recording the claim plus ten per cent attorney’s fees to cover the cost thereof in the event it becomes necessary for the claimant to employ an attorney to enforce collection, plus one-fourth. The bond shall be approved by the clerk of court conditioned that in the event the legality of such claim or claims is established by suit or otherwise, the bond shall remain in full force and effect to protect the interest of the claimant in the premises.
B. The provisions of this Section shall apply to liens filed prior to or subsequent to July 31, 1968.
Added by Acts 1960, No. 359, §§ 1, 2. Amended by Acts 1968, No. 524, § 1.